Carroll DUNHAM, Plaintiff,

v.

UNITED STATES of America,
Defendant and Third-Party
Plaintiff,

v.

SECOND NATIONAL BANK OF NEW
HAVEN, Third-Party Defendant.

Civ. No. 11572.

United States District Court
D. Connecticut.

May 9, 1969.

See also, D.C., 42 F.R.D. 169.

14. Affirmed, 4 Cir. 1963, 314 F.2d 45, per curiam, without reference to this point.

Arthur C. Williams, Williams, Smith & Runyon, Bridgeport, Conn., for plaintiff.

Jon O. Newman, U. S. Atty., Hartford, Conn., and Gerald Fain, Dept. of Justice, Tax Division, Washington, D. C., for defendant and third party plaintiff.

Richard G. Bell, Schuyler Jackson, and Louis M. Winer, Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for third party defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

ZAMPANO, District Judge.

In this action, plaintiff Carroll Dunham seeks a withholding and social security tax refund of $48.68 from the United States for taxes he paid on behalf of an employee of J. A. Otterbein, Inc., (Otterbein). 28 U.S.C. § 1346(a) (1). The government answered and filed a counterclaim for $10,939.21, the balance of a penalty tax assessed under 26 U.S. C. §§ 6671(b) and 6672, against Dunham as treasurer of Otterbein. In addition, the government has filed a third-party complaint against the Second National Bank of New Haven (Bank) to collect the identical assessment.[1]

The Bank now moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, alleging that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law.

On June 24, 1963, the Bank and Otterbein entered into financial arrangements which included a loan and security agreement, a promissory note for $250,-000, and an accounts receivable financing contract. The proceeds of the note were disbursed to Otterbein for the operation of its business and for the acquisition of certain equipment. The note was secured by the equipment acquired as well as by a lien on and rights of set-off against all of Otterbein's deposits in the Bank. At all material times Otterbein maintained a commercial checking account at the Bank.

The accounts receivable financing contract permitted Otterbein to assign accounts to the Bank which could thereafter loan up to 75% of the value of accounts assigned. Each time Otterbein assigned a group of accounts receivable to secure a loan, it would execute and deliver its note for the amount of the loan. The proceeds of all such loans were credited directly to its checking account at the Bank. As assigned accounts receivable were collected by Otterbein, their proceeds were delivered to the Bank and placed into a "cash collateral account," as security for the accounts receivable loans. The Bank had the right to charge the cash collateral account against the outstanding accounts receivable loan balance. Until November, 1964, the practice of the Bank was to credit 75% of the cash collateral ac-

---

1. The Bank has moved to dismiss this third-party complaint on the grounds that it is improperly joined in the action under Rule 14(a), F.R.Civ.P. In any event, the Court will allow a proper amendment of the government's pleadings in order to permit joinder of the Bank as a counter-defendant under Rules 13(h) and 20(a), F.R.Civ.P. See Timely Products, Inc. v. Arron, 303 F.Supp. 713, D.Conn. March 6, 1969 (Zampano, J.).

count to the loan balance as a payment of the loans and to credit the remaining 25% to Otterbein's checking account on a weekly basis.

In October, 1964, Otterbein was in extreme financial difficulty, and the Bank commenced to exercise its rights of set-off under the loan and security agreement. It debited $21,729.60 to Otterbein's checking account and credited that amount against the balance due on the promissory note.

Dunham contends he called the Bank on October 23 and received assurances from C. A. Barrett, Executive Vice President of the Bank, that the funds debited under the setoff would be restored to the checking account for the payment of Otterbein's tax liability. Accordingly, he alleges, he then mailed six checks to the government in behalf of Otterbein in payment of its third quarter 1964 withholding and social security taxes. The checks, totalling $8,679.30, were returned by the Bank for insufficient funds on November 6, 1964.

Despite creditors' legal actions, efforts were made to effect a financial reorganization to save Otterbein. Several examples illustrate the Bank's involvement and participation in Otterbein's business operations during this time:

1) the Bank paid specially selected checks drawn by Otterbein on an overdraft basis;

2) on November 4 the Bank credited over $11,000 to Otterbein's account;

3) the Bank honored checks drawn to others at or about the time it dishonored the government's checks;

4) the Bank controlled the flow of cash from the collateral account into the checking account, thereby influencing the business relationship between Otterbein and its creditors.

All attempts to resuscitate Otterbein's business life failed, and, on January 15, 1965, it was adjudicated a bankrupt.

Against this general factual background, the Bank contends that as a matter of law it was not an "employer" required by statute to pay over the taxes and, even assuming it is deemed one, its failure to pay was not willful. The Court disagrees.

It may be true that the Bank was not an "employer" in any technical sense, but employment is not the test for liability under § 6672.[2] Material issues of fact are present concerning whether the Bank assumed such control over Otterbein's business that it became the "person" exercising final discretion as to which creditors were to be paid and when. If the Bank were found by the trier to have "the final word as to what bills or creditors should or should not be paid," liability may attach. White v. United States, 372 F.2d 513, 516, 178 Ct.Cl. 765 (1967); Pacific National Insurance Company v. United States, 270 F.Supp. 165, 170 (N.D.Cal.1967).

Similarly, factual issues are present with respect to the "willful" nature of the Bank's actions. The element of willfulness is present when one "in his self-interest and clothed with the taxpayer's mantle of authority frustrates payment by the exercise of a substantial control of the employer." Regan & Company v. United States, 290 F.Supp. 470, 481 (E.D.N.Y.1968). In Melillo v. United States, 244 F.Supp. 323 (E.D.N.Y.1965), the court stated, at page 327, "In this Circuit and in some other Circuits, a

**2.** Sec. 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax.

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

voluntary, conscious and intentional preference of creditors over the Government, is deemed willful under Section 6672 of the Internal Revenue Code of 1954."

The Bank's reliance on United States v. Hill, 368 F.2d 617 (5 Cir. 1966), to carry it to judgment as a matter of law is misplaced. There it was uncontroverted that "control over corporate funds was not impaired by the bank," and that the employer had unencumbered corporate funds sufficient to pay the tax liability. Moreover, the rationale of Hill has been challenged in well reasoned opinions of other courts. See, e. g., Bloom v. United States, 272 F.2d 215, 223 (9 Cir. 1960); Pacific National Insurance Company v. United States, supra, 270 F.Supp. at 171.

Accordingly, the motion for summary judgment is denied.