**William W. ADAMS, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant and Third Party Plaintiff-Appellant,**

v.

**LAKESHORE COMMERCIAL FINANCE CORPORATION, Third Party Defendant-Appellee.**

**No. 73–1378.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1974.

Decided Oct. 3, 1974.

Rehearing Denied Nov. 7, 1974.

Corporate officer brought suit for refund of amount paid on assessment against him for failure to pay employee withholding taxes and for determination adjudicating abatement of penalties assessed against him. Government filed counterclaim against officer and filed third-party complaint alleging that lender was liable for payment of taxes due "as a person who willfully failed to pay over federal income and employment taxes withheld." The United States District Court for the Eastern District of Wisconsin, Myron L. Gordon, J., 353 F.Supp. 333, granted lender summary judgment, and Government appealed. The Court of Appeals, Grant, Senior District Judge, held that substantial issues of fact as to whether lender was such a "person" precluded summary judgment.

William J. Campbell, District Judge, dissented and filed opinion.

Richard M. Roberts, Acting Asst. Atty. Gen., Donald H. Olson, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., William J. Mulligan, U. S. Atty., Milwaukee, Wis., for plaintiff-appellant.

Robert K. Steuer, Milwaukee, Wis., for plaintiff-appellee.

Before PELL, Circuit Judge, and CAMPBELL* and GRANT, Senior District Judges.**

GRANT, Senior District Judge.

During the second and third quarters of 1970, The Skobis Company (hereinafter "Skobis") withheld federal income and employment taxes from the wages of its employees. However, the amounts so collected by Skobis during that period were never paid over to the government as required by law. Accordingly, the Commissioner of Internal Revenue, under the authority of Title 26 U.S.C. § 6672 of the Internal Revenue Code of 1954, assessed the statutory penalty equal to 100% of the amount not paid over against William W. Adams, an officer of Skobis, and against Lakeshore Commercial Finance Corporation (hereinafter "Lakeshore"), a creditor of Skobis. The penalty was first assessed against Adams in the amount of $44,152.80. After he paid a portion thereof ($405.68), he filed a claim for refund, which was eventually disallowed. He then instituted the present action for a refund of the amount paid and for a determination adjudicating the abatement of the penalties assessed against him. The government, in turn, counterclaimed against Adams for the unpaid balance of the penalty and then filed a third party complaint against Lakeshore alleging that Lakeshore was liable for the payment of the taxes due under § 6672 "as a person who willfully failed to pay over federal income and employment taxes withheld from the wages of employees of the Skobis Company" in the amount of $43,747.12, the difference between the original amount assessed against Adams and the amount which Adams paid. The district court, however, granted Lakeshore's motion for summary judgment and determined that Lakeshore was not a "person" within the meaning of § 6672. The court held, therefore, that as to Lakeshore there existed no substantial factual issues for trial. This is an appeal from that judgment.

The government (herein the appellant) contends, in essence, that the district court was in error when it concluded that there was no issue of triable fact as to whether Lakeshore (a lender) is a "person" who willfully failed to pay over taxes withheld from the employees of Skobis under § 6672. First of all, appellant contends that a lender (such as Lakeshore) can be a "person" responsible for the debtor's failure to pay over withheld taxes under § 6672 if the lender exercises substantial control over the critical functions of the debtor corporation. In the present case, appellant argues that Lakeshore did, in fact, become so involved in the business affairs of Skobis with respect to the disbursal of funds that it was responsible for the failure of Skobis to pay over withheld taxes. This contention is grounded upon the existence of a certain revolving loan agreement between Lakeshore and Skobis whereby Lakeshore, during a period of six months, made continuous advances of funds to Skobis (61 in all) which were secured by the latter's accounts receivable and inventory and which funds were, at one time during the period, allegedly restricted by Lakeshore for payment to the Internal Revenue Service in satisfaction of various amounts that Skobis owed for employee withholding

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

** Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

taxes. In any event, appellant maintains that the conflicting affidavits of William Adams and Lawrence R. Appel, the president of Lakeshore, as to whether or not Lakeshore had any control over the disbursement of Skobis' funds undoubtedly presents a substantial fact question as to Lakeshore's responsibility for the failure of Skobis to pay over withheld taxes to the United States. It is appellant's position, therefore, that the district court's action granting summary judgment for Lakeshore should be reversed and remanded for trial since a genuine issue of material fact does exist with respect to Lakeshore's liability under § 6672.

On the other hand, Lakeshore attacks the sufficiency of the Adams affidavit, calling it vague and conclusory, and contends that the affidavit of Lawrence Appel establishes that Lakeshore was not an officer or employee of Skobis; that no one affiliated with Lakeshore was ever affiliated with Skobis; and that Lakeshore had no control over the financial affairs of Skobis beyond the making of loans pursuant to the agreement. Although Lakeshore admits that, during the period in question, it made 61 advances to Skobis in which certain checks were issued jointly to Skobis and the tax authorities, and that one check, as a matter of fact, was issued to another secured creditor, nevertheless appellee emphasizes that once it transferred funds to Skobis' checking account, it had no further control over the disbursal of the funds. Its authority, it is maintained, included only the collection of accounts receivable pursuant to the loan agreement and the determination of the amounts of the advances to Skobis. Beyond this, says appellee, the funds were available for those persons managing the corporate affairs of Skobis to distribute by determining "which creditors were to be paid, and when."

The thrust of Lakeshore's position, then, is that since it lacked the necessary control over the funds of Skobis relative to the disbursal of those funds to creditors, the district court correctly held that it was not a "person" under § 6672 liable for Skobis' failure to pay over the taxes withheld from its employees. Therefore, it is argued that the government's contention that a genuine issue of material fact exists with respect to whether Lakeshore actually controlled the affairs of Skobis is not supported by the record. Accordingly, appellee urges this court to affirm the judgment of the district court granting its motion for summary judgment.

The sole issue presented for our consideration and determination in this appeal, therefore, is whether the district court erred in concluding that there is no issue of triable fact as to whether Lakeshore Commercial Finance Corporation, a lender, is a "person" who is required and who willfully failed to collect, account for, and pay over the withholding taxes of its debtor within the meaning of § 6672 of the Internal Revenue Code of 1954.

The "person" who is responsible for the payment of corporate taxes within the meaning of § 6672 is that individual who has the final word as to what bills should or should not be paid, and when. Turner v. United States, 423 F.2d 448, 449 (9th Cir. 1970). In this context, the word "final" means significant rather than exclusive control over the disbursal of funds. Dudley v. United States, 428 F.2d 1196, 1201 (9th Cir. 1970). Moreover, although the liability for failure to collect, account for, and pay over withheld taxes usually attaches to those high corporate officials who have the power and responsibility within the corporate structure for seeing that taxes withheld from various sources are remitted to the government, Monday v. United States, 421 F.2d 1210, 1214 (7th Cir. 1970), the party subject to the penalty for the corporation's failure to pay the taxes due is not always or necessarily an official of the delinquent corporation. McCarty v. United States, 437 F. 2d 961, 967, 194 Ct.Cl. 43 (1971). The fact of the matter is that the responsibility for nonpayment of the tax includes all those so connected with the

business as to be responsible for the performance of the act in respect of which the violation occurs. *Dudley, supra,* 428 F.2d at 1201. Indeed, § 6672 is broad enough to reach an entity which assumes the function of determining whether or not the employer will pay over taxes withheld from its employees. *Pacific National Insurance · v. United States,* 422 F.2d 26, 30 (9th Cir. 1970). It is generally accepted, therefore, that employment is not the test of liability under § 6672. *Dunham v. United States,* 301 F.Supp. 700, 702 (D.Conn. 1969); *Regan & Company v. United States,* 290 F.Supp. 470, 481 (E.D.N.Y. 1968).

■ In the instant case, appellee places heavy reliance on the case of *United States v. Hill,* 368 F.2d 617 (5th Cir. 1966), to support its argument of non-liability under § 6672. The appellant argues that this reliance is misplaced and, in any event, asserts that *Hill* should be interpreted narrowly in light of the later cases dealing with § 6672. In *Hill* the court held that a bank which loaned funds to a defaulting corporation was not an "employer" subject to the penalty for the non-payment of employee income and F.I.C.A. taxes under § 6672 where the bank did not manage the internal affairs of the corporation, where it was under no duty to file corporate income tax returns, and where it withheld no taxes from the corporation's employees. Appellee maintains that since the facts of the instant case are clearly in line with those in *Hill,* the same disposition should result here regarding the question of Lakeshore's liability for Skobis' unpaid withholding taxes. The court below was in accord with this viewpoint.

This court is of the opinion, however, in accordance with appellant's position, that *Hill* is not dispositive of the present case. There are two significant reasons for our opinion. In the first place, we are able to distinguish *Hill* on the issue of the degree of control that the lender in that case had over the debtor corporation and the extent to which Lakeshore could arguably control the financial affairs of Skobis in the instant case. In *Hill* the court expressly found that the lending institution had no power at all regarding the management and regulation of the debtor corporation's internal affairs. In the present case, however, the affidavit of William Adams, a former officer of Skobis, indicates that: (1) Lakeshore possessed "final authority" over the application of the earnings of Skobis; (2) this authority was exercised "on a day-to-day basis"; and (3) Lakeshore, at one point, actually "determined to discontinue" the payment of withholding taxes to the government on behalf of Skobis. Because the essential allegations in this affidavit are contested by the Appel affidavit, this court perceives that the issue of whether Lakeshore had control over the disbursal of Skobis' funds, if any, is not as clearly defined as it was in *Hill.* Therefore, because this crucial issue is obfuscated in the present case, we deem that *Hill* is not applicable.

Secondly, in regard to *Hill,* we note that its rationale has become somewhat eroded as of late in that it has been challenged in other well-reasoned opinions of other courts. *Dunham, supra,* 301 F.Supp. at 703. Although on the facts before it, the court in *Hill* appeared to have sufficient reason to justify its finding that the lending institution there was not subject to the penalty under § 6672, we note that the more recent trend seems to favor an expanding view of "persons" liable or responsible for the nonpayment of withholding taxes. In *Pacific National, supra,* 422 F.2d at 30–31, for example, the court, in finding the surety liable under § 6672, stated that the liability imposed by that section is not restricted to the officers or employees of corporations and members or employees of partnerships. Rather, the court said that there is a "calculated indefiniteness" with respect to the scope of "persons" who may incur liability for the failure to pay over withheld taxes in order that liability might be imposed on those actually responsible for the em-

ployer's failure to pay over the tax. In White v. United States, 372 F.2d 513, 516, 178 Ct.Cl. 765 (1967), the court articulated this concept in the following manner:

> In reaching a determination with respect to the person or persons upon whom to impose responsibility and liability for the failure to pay taxes, the courts tend to disregard the mechanical functions of the various corporate officers and instead emphasize where the ultimate authority for the decision not to pay the tax lies.

Based on the evidence in the instant case, and in particular the conflicting affidavits, we hold that it is not completely clear where that "ultimate authority" to pay the tax is vested and therefore where the ultimate liability for the failure to pay the tax lies. Indeed, Lakeshore, by virtue of its business affiliation with Skobis, may come within the scope of "persons" liable as an entity which had significant control over the disbursal of Skobis' funds during the period in question. Then again, it may not. In any event, and in keeping with the more recent trend in assessing § 6672 liability, we adhere to our position and decline to give *Hill* controlling effect in light of the evidence in the case before us.

Finally, and most importantly, we find it interesting to note that summary judgment has been deemed inappropriate in cases where, as here, questions arise concerning whether a lending institution has assumed such control over its debtor's business as to become a liable "person" and whether the particular institution has acted willfully in preferring other creditors over the government within the meaning of § 6672, since such questions present material and substantial issues of fact. *Dunham, supra,* 301 F.Supp. at 702. Since the conflicting affidavits in the present case involve such issues, we now hold that summary judgment was precluded in the court below.

In summary, then, we do not intend in this opinion to in any way indicate whether or not Lakeshore is, in fact, a "person" who is liable under § 6672 for the failure of Skobis to pay over the taxes withheld from its employees during the second and third quarters of 1970. Rather, we merely hold, based on the evidence, that the district court was in error when it determined, in effect, that the instant situation presented no substantial factual issues for trial. On the contrary, the opposing affidavits of William Adams and Lawrence Appel do, in our opinion, present triable issues of fact regarding Lakeshore's possible liability under § 6672.

Accordingly, the judgment of the district court granting summary judgment in favor of Lakeshore Commercial Finance Corporation is hereby reversed, and the cause is remanded for trial.

WILLIAM, J., CAMPBELL, Senior District Judge (dissenting).

I do not disagree with the proposition that a creditor, under appropriate circumstances, may properly be considered a "person required to collect, truthfully account for and pay over" taxes for which its debtor is liable, and that where such circumstances exist, the appropriate penalty may be assessed against such a "person" pursuant to § 6672 of the Internal Revenue Code (26 U.S.C.). Nor do I disagree with the well established rule that summary judgment may not be entered where an affidavit submitted in opposition to a motion for summary judgment raises a genuine issue as to any material fact. The majority and I part company, however, in our respective views regarding the circumstances under which a lender may be considered a "person" for the purposes of § 6672, and a fortiori with regard to the question of whether the affidavits in the instant case raise a genuine issue as to a material fact. Accordingly, I respectfully dissent.

The Internal Revenue Code of 1954 imposes upon employers the duty to collect withholding taxes by deducting the amount of the tax from the wages paid to employees [§§ 3102(a) and 3402(a)].

It also provides that any employer required to collect these taxes shall be liable for the payment thereof [§§ 3102(b) and 3403]. But with respect to the imposition of penalties for failure to collect and pay withholding taxes, the Code does not limit potential liability to "employers". Rather, § 6672 provides that:

"[a]ny person required to collect, truthfully account for, and pay over any tax . . . who willfully fails to collect such tax, . . . or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, . . . be liable to a penalty equal to the total amount of the tax evaded . . .".

With respect to the collection of withholding taxes, § 6672 has been construed to apply to "persons" other than employers, and more specifically, to "impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax". Pacific National Insurance Company v. United States, 422 F.2d 26, 31 (9th Cir. 1970). Whether a person other than the employer has assumed "the function of determining whether or not an employer will pay over taxes withheld from its employees" depends upon whether that person has the final word or at least significant control "as to what bills should or should not be paid, and when". Pacific National Insurance Company v. United States, 422 F.2d 26, 30–31 (9th Cir. 1970); Wilson v. United States, 250 F. 2d 312, 316 (9th Cir. 1958); Turner v. United States, 423 F.2d 448, 449 (9th Cir. 1970).

Thus, the basic issue in the instant case is whether the affidavit in opposition to the motion for summary judgment raised a genuine issue as to whether Lakeshore maintained such control over the payment of Scobis Company's bills and obligations as to qualify this creditor as a "person" within the meaning of § 6672.

According to the affidavit of Lawrence R. Appel, President of Lakeshore, at no time was Lakeshore or any of its officers, directors or employees, an officer, director or employee of Scobis or a signatory to any checking account maintained by Scobis. The Appel affidavit describes a creditor-debtor relationship between Lakeshore and Scobis which roughly approximates a revolving loan arrangement, under which Lakeshore agreed to advance various loans to Scobis "secured by a security interest under the Uniform Commercial Code in property of Scobis including accounts receivable and inventory (hereafter 'collateral'). Said security agreements were perfected by filing financing statements." (Appel affidavit, paragraph 4).

The Appel affidavit further avers that each of the continuous advances of funds by Lakeshore to Scobis was dependent upon the amount of collateral available. As collateral became liquidated through the collection of accounts receivable or the sale of inventory, the proceeds were applied against the balance due on previous advances. Except for a check in the amount of $629.63 made payable to one of Scobis' creditors, and with the further exception of certain other checks issued prior to June 22, 1970 payable jointly to Scobis and various taxing authorities, each of the sixty-one advances made by Lakeshore to Scobis between April 1, 1970 and September 30, 1970 was made either by a check payable to Scobis or by the transfer of funds to Scobis' checking account maintained at a local bank. These sixty-one advances totalled $377,792.46.

Most significantly, the Appel affidavit avers that once Lakeshore had issued its check or transferred funds to the checking account of Scobis, "neither Lakeshore nor any of its officers nor employees had any further control of the funds advanced to Scobis." (Appel affidavit, paragraph 9).

The affidavit of William W. Adams, filed in opposition to the motion for summary judgment, states that the loan

agreement between Lakeshore and Scobis contained provisions whereby:

"Lakeshore would receive all of the earnings and income taken in by The Scobis Company, which earnings and income would be in part applied by Lakeshore against the indebtedness owed it by The Scobis Company, and would in part be reimbursed to The Scobis Company for the payment of The Scobis Company operating expenses".

This allegation is wholly consistent with the revolving loan arrangement described in the Appel affidavit. The "earnings and income" received by Lakeshore constitute the accounts receivable paid to Scobis and the proceeds from the sale of inventory, or in other words, the liquidated collateral which had secured previous advances. The partial reimbursement of earnings and income by Lakeshore to Scobis was the advancement of further funds secured by inventory and uncollected accounts receivable. Consistent with Appel's statement that Lakeshore had no further control over funds advanced to Scobis, the Adams affidavit does *not* allege that these funds were earmarked for the payment of any particular operating expenses in preference to others.

Similarly, the Adams affidavit states that:

"final authority concerning the application of the earnings and income of The Scobis Company . . . was vested in Lakeshore . . . and . . . such authority was exercised on a day-to-day basis in conjunction with the advice, recommendations, requests and conferences with one Earl R. Lenger [chief operating officer of Scobis]".

Again, since "earnings and income" represent liquidated collateral which had been used to secure previous advances, the "final authority" exercised by Lakeshore over the application thereof is consistent with the revolving loan arrangement which generated further funds for the payment of Scobis expenses. The

fact that sixty-one such advances were made over a six month period explains the almost daily contact between Scobis' chief operating officer and Lakeshore.

The only allegation made by Adams on the basis of personal knowledge pertaining to control by Lakeshore over funds lent to Scobis is the statement that sometime during 1970, "certain funds [were] restricted by Lakeshore for the payment to the Internal Revenue Service in satisfaction of various amounts owed for employee withholding taxes", and that during the quarters ending June 30, 1970 and September 30, 1970, Lakeshore "determined to discontinue such payments from the assets that it held, such assets constituting the income and earnings of The Scobis Company . . . ".

In my view, this allegation falls far short of raising a genuine issue as to whether Lakeshore exercised significant control over "what bills should or should not be paid, and when". Turner v. United States, *supra*. While Lakeshore may have advanced some funds to Scobis for the payment of withholding taxes, Adams does not allege that Lakeshore, at any time, *refused* to issue funds for this purpose. The fact that earnings and income (liquidated collateral) was not used to pay taxes is quite beside the point. Operating expenses, including the payment of employees' salaries and wages, were to be paid out of the funds advanced by Lakeshore to Scobis. The employer was obligated to withhold a portion of these wages and to pay said amount to the Internal Revenue Service. It is therefore the exercise of control over the funds advanced by Lakeshore to Scobis which determined liability for the purposes of § 6672.

The Appel affidavit alleged that Lakeshore exercised no control over funds lent, once they were advanced to Scobis. It was the respondent's burden to establish a genuine issue as to whether Lakeshore exercised "significant control" over the use of these funds. The Adams affidavit establishes only that Lakeshore controlled the liquidated collateral, described by Adams as earnings and in-

come. Under the revolving credit arrangement between Lakeshore and Scobis, control over the liquidated collateral is irrelevant to the issue of whether Lakeshore may be considered a "person" for the purposes of § 6672. Significant control over the funds used to pay the bills—i. e. the funds advanced by Lakeshore to Scobis—is the critical determinant under these circumstances. Since the respondent failed to raise a genuine issue as to whether Lakeshore exercised such control over these funds, I believe summary judgment was properly entered.