Mae HAFFA et al., Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff-Appellant,

v.

Thomas P. COOPER, Third-Party Defendant-Appellee.

No. 74–1581.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1975.

Decided May 28, 1975.

Scott P. Crampton, Asst. Atty. Gen., Jonathan S. Cohen, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for appellant.

James E. Beckley, Jeffrey Jahns, Robert M. Woodward, Chicago, Ill., for appellees.

Before HASTINGS, Senior Circuit Judge and SWYGERT and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

The United States takes this appeal from a judgment denying its third-party claim against Thomas P. Cooper for recovery of $15,000 in delinquent payroll withholding taxes. A withholding tax deficiency of $79,705.89 was originally assessed against Titus Haffa, Ethel Haffa, Raymond Spivey, and Cooper for failure to pay withholding taxes due from G.T.O. Steel Erectors, Inc. for the quarters ending September 30, 1966 and December 31, 1966, all in violation of section 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672. This assessment was paid in full by the Haffas on September 28, 1971.[1] Thereafter, a claim for refund was made to the IRS and upon denial of this claim, the Haffas brought this suit to compel a refund. The Government filed a third-party complaint against Cooper for the full assessment of $79,705.89 on January 15, 1973. On April 6, 1973 a similar third-party claim was filed against Spivey. Subsequently, the refund suit was settled with the sum of $15,000 being refunded to the Haffas.[2] A default was taken on the Government's claim against Spivey, which judgment remains unsatisfied.

[1]. Payment was made by Titus Haffa, Ethel Haffa, Mae Haffa, Dora Haffa, and Pauline Haffa, who were all members of the Aurora Downs Race Track Partnership, which had employed G.T.O. to make certain repairs and alterations at the Aurora Downs Race Track, in Aurora, Illinois.

[2]. Refunds of $5,000 each were paid to Mae and Dora Haffa and the estate of Pauline Haffa.

■ The claim against Cooper was tried in the district court without a jury. At the conclusion of the evidence the district judge entered judgment for Cooper, holding that Cooper was not a "person required to collect, truthfully account for, and pay over" the disputed taxes within the contemplation of section 6672. In addition the district judge held that Cooper's failure to collect, truthfully account for, and pay over was not "willful." The Government appeals both findings.[3]

## I

Viewing the facts in this case in the light most favorable to the findings and judgment of the district court, Triangle Conduit & Cable Co. v. FTC, 168 F.2d 175, 179 (7th Cir. 1948), aff'd, 336 U.S. 956, 69 S.Ct. 888, 93 L.Ed. 1110 (1949); Uniroyal, Inc. v. Mumford, 454 F.2d 1233 (7th Cir. 1972), the following situation is disclosed:

In 1966 Pauline, Mae, Dora, and Ethel Haffa formed the Aurora Downs Race Track Partnership for the purpose of owning and operating the Aurora Downs Race Track in Aurora, Illinois. Titus Haffa, husband of partner Ethel, and registered agent for the partnership, retained Thomas Cooper to act as financial advisor for the partnership (Cooper was also involved in other business enterprises of the Haffas.) In order to secure racing dates for the track it became necessary to renovate certain of the facilities at Aurora Downs. Negotiations were conducted with a contractor who had previously done work at the track. Cooper was involved in these negotiations, and after reviewing the bid submitted by this contractor, Cooper recommended to the Haffas that the bid submitted was "financially feasible," that is, that the bidding contractor would be able to post a performance bond and provide financial capabilities ensuring completion of the project.

Subsequent to the submission of this bid, Titus Haffa was contacted by a longtime acquaintance who suggested that the project could be completed at considerable savings through a company organized by Raymond Spivey and Charles Fazio. The company was called G.T.O. Steel Erectors. Cooper was asked his opinion concerning the use of G.T.O. and he recommended against using G.T.O. on the project. Shortly after making this recommendation Cooper went on vacation. Upon his return he was informed that G.T.O. had been awarded the renovation contract and had begun work on the project. This was in April of 1966. From April until September 14, 1966 Cooper had no contact with G.T.O. other than processing payments of G.T.O. invoices by the Aurora Downs partnership, including payroll invoices.

Some time immediately prior to September 14, 1966 Cooper was directed by Titus Haffa to assume the role of cosignor on a G.T.O. checking account. Haffa did so at the request of an officer of the Old Second National Bank of Aurora, where G.T.O. maintained this account. The officer informed Haffa that G.T.O. had been releasing checks in excess of funds on deposit and that this was becoming a major problem, especially on paydays. He further indicated that the bank was about to withdraw its account because of these overdrafts. Haffa was told that this could be avoided by having Cooper, with whom the bank was familiar, cosign all future G.T.O. checks to assure that when such checks were released, sufficient funds would be on deposit in the account to cover them.

---

**3.** In his answering brief, Cooper contends that preliminary to any consideration of the merits of the Government's appeal, we must review the determination by the district judge that Cooper was a proper third-party defendant in this suit. The record shows, however, that no notice of appeal was ever filed by Cooper, so the propriety of the district court's decision and order of April 18, 1973 denying Cooper's motion to dismiss the third-party complaint is not before us, the filing of notice of appeal being jurisdictional. Files v. City of Rockford, 440 F.2d 811, 814 (7th Cir. 1971); Schaefer v. First National Bank of Lincolnwood, 465 F.2d 234, 236 (7th Cir. 1972).

Pursuant to this arrangement Cooper spent approximately an hour to an hour and one-half per week at the G.T.O. offices, devoting the major portion of this time to signing checks and verifying that expenditures claimed by G.T.O. were actually being made at the Aurora Downs project. Cooper also called the bank on several occasions to assure that the balance in the G.T.O. checking account would cover all checks released. During the period of his cosigning authority the affairs of G.T.O. occupied a very small portion of Cooper's time and attention since he was also president of Haber Corporation, a manufacturing concern; a member of the board of directors of Webcor Corporation, which was then in a period of "trying times"; the administrator of extensive oil properties owned by the Haffas in Texas, Oklahoma, and West Virginia; and the administrator of substantial rental properties owned by the Haffas.

Cooper's cosigning authority lasted from September 14, 1966 to December 9, 1966. During all of this time Cooper was aware that the Aurora Downs partnership was making payments to G.T.O. which included amounts sufficient to cover gross payroll, including withholding taxes. At the same time he knew that the checks disbursed by G.T.O. to their employees were for net wages, since he was signing these checks as they were disbursed. Cooper never undertook any supervisory role respecting the accounting and bookkeeping of G.T.O. other than in relation to the one checking account with the Aurora bank, and he never exercised any control over preferences of one creditor to another.

In October of 1966 Spivey informed Cooper that no return was being prepared or filed in regard to G.T.O. withholding taxes for the third quarter because the accountant for G.T.O. had died. Spivey indicated that he had no clear idea what the extent of the G.T.O. liability was for that quarter but that if the liability was substantial there could be problems in making payment. Spivey asked Cooper for a "recommendation" in the matter. Cooper advised that "above

all, you['d] better secure somebody and get a return prepared and filed because you could have serious problems if you fail to file any tax return." He also indicated that if funds were available, the liability should be paid when determined. Subsequently Cooper was led to believe that another bookkeeper was retained to remedy the problem.

After December 9, 1966 when Cooper's cosigning authority ended, Spivey again took full control of the account and wrote numerous checks in connection with the business of G.T.O. In December or January certain creditors of G.T.O. were not being paid by Spivey and these creditors began to contact the Aurora Downs partnership about their claims. Cooper believed these claims would entitle the complaining creditors to mechanics' liens against the Aurora Downs property. He also believed that if the Aurora Downs partnership allowed these liens to attach this would constitute a breach of the partnership's mortgage on the property and grounds for revocation of the partnership's racing license as well. In order to avoid these rather dire consequences, Cooper paid the creditors of G.T.O. on behalf of the partnership, and with partnership funds. Cooper also signed a letter on behalf of the partnership which accompanied a check to the Government for $5,000 to be applied to any deficiency on the G.T.O. tax account for the fourth quarter of 1966. The letter specifically described the payment as voluntary, and disclaimed any liability of the Aurora Downs partnership relative to the G.T.O. tax account. The letter was written on partnership stationery and signed by Cooper as the agent of Pauline Haffa, Dora Haffa, Mae Haffa, and Ethel Haffa. Cooper did not personally draft the letter although he did review its contents prior to signing it.

II

The Government contends that these facts will not support the judgment of the district court that Cooper was not a "person" within the intendment of 26 U.S.C. §§ 6672 and 6671(b). Section 6672 provides in pertinent part that:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax or truthfully account for and pay over such tax . . . shall . . . be liable to a penalty equal to the total amount of the tax evaded or not collected, or not accounted for and paid over. . . .

Section 6671(b) defines the term "person":

The term "person," as used in this subchapter includes an officer or employee of a corporation or a member of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

These sections have widely been interpreted to include all "persons so connected with a business as to be in a position to exercise full authority over financial affairs," United States v. Hill, 368 F.2d 617, 621 (5th Cir. 1966); Pacific National Insurance Company v. United States, 422 F.2d 26, 30 (9th Cir. 1970), and thus, not to be strictly limited to those holding formalized positions within a corporation or partnership, Adams v. United States, 504 F.2d 73, 75–76 (7th Cir. 1974).

The Government presents two issues relative to the holding below that Cooper was not a "person" liable under section 6672. First, it challenges the possible inference in the decision below that section 6672 liability can never reach those who are not officers or employees of a corporation; second, it challenges the factual determination that Cooper did not have control of G.T.O. financial affairs sufficient to make him responsible for payment of withholding taxes by that corporation within the rationale of recent cases interpreting section 6672.

### A

The decision below is rather brief in its treatment of Cooper's status as a "person" under the statutes involved here:

We do not believe that the government's proof reaches the question of Cooper's liability for G.T.O. taxes, since he was not "required" to collect or pay over taxes for that corporation. At least the government has cited no statute requiring an outsider, such as a contract debtor, to see to the application of funds paid to his creditor. Nor was Cooper a "person" within the definition of § 6671(b) which provides as follows:

[Quote from statute omitted.]

The government argues that the foregoing coverage is not exclusive and that outsiders can be covered by it also. Cooper was not an officer or employee of the G.T.O. corporation at any time but did control the payments to it by a partnership known as Aurora Downs Race Track pursuant to a construction contract between those parties. The government therefore concludes that Cooper is liable for G.T.O.'s taxes under Mueller v. Nixon, et al., 73–1 U.S.T.C. § 9130 [470 F.2d 1348] (6th Cir. 1972) and the cases cited therein. Other cases to the contrary are more persuasive, however. E. g., U.S. v. Lumetta, 73–1 U.S.T.C. § 9386 [31 A.F.T.R.2d 73–1067] (E.D. Mo.1973); U.S. v. Hill, et al., 66–2 U.S.T.C. § 9736 [368 F.2d 617] (5th Cir. 1966); see also Monday v. U.S., 421 F.2d 1210 at 1214–5 (7th Cir. 1970).

We do not read this opinion to hold that section 6672 liability is in all cases limited to those who occupy formal corporate office or traditional employee status. This restrictive reading of the statute has of course been rejected by this circuit in our recent opinion in Adams v. United States, *supra*.[4] In that case the Government sought to recover the statutory penalty from a lending institution and one of its employees based on the failure of one of the institution's corporate debtors to properly withhold any pay over employees taxes. The Government contended that incident to a revolving loan agreement, the financing institution had assumed "substantial control over the critical functions of the

4. Our decision in *Adams* was rendered subsequent to the decision of the district court in this case.

debtor corporation" and had thereby incurred a duty to ensure that the corporation would properly withhold any pay over the employee taxes in dispute. In reversing a summary judgment in favor of the defendant lender and its employee which had been granted on the premise that neither qualified as a "person" under the statute, we held that the critical question was whether the lender had assumed significant control of the disbursal of funds by the debtor corporation. 504 F.2d at 75–76. We specifically rejected in *Adams* the notion that employment or formal corporate office is a prerequisite to liability under section 6672.

■ As we said, we do not read the opinion of the trial judge here to contravene *Adams*. Rather, we read his opinion merely to hold that control of payments to a corporate employer is not alone sufficient to raise a duty in connection with that corporation's employee taxes. We agree with this premise. The key to liability under section 6672 is control of finances within the employer corporation: the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its withholding tax obligations. The cases cited in the district court's opinion are enlightening in this regard.

The district court rejected Mueller v. Nixon, 470 F.2d 1348 (6th Cir. 1972), which had been urged as controlling by the Government. In that case liability was found where an agent of a lending institution had assumed "absolute control" of the operations of the borrowing employer corporation, but had not used that control to assure proper withholding and payment of employee taxes. In rejecting *Mueller*, the district court indicated that it was more "persuaded" by the cases of United States v. Lumetta, 31 A.F.T.R.2d 73–1067 (E.D.Mo.1973), and United States v. Hill, 368 F.2d 617 (5th Cir. 1966). In *Lumetta*, the defendant was a director and officer of the employer corporation during the tax quarters in question, but was found not to have had sufficient control of financial decision-making to be liable under section 6672. Although the defendant in *Lumetta* was authorized to sign checks of the corporation and was a required cosignor of all checks over $500, the court found that such checks were always presented to him by others and that he "made no determination as to which creditors would be paid or as to when the checks would be issued, * * * nor did he possess any legal or actual power to exercise general policy or fiscal control to the extent he would be, or is, responsible for the corporation's failure to remit its payroll taxes." In *Hill*, the court affirmed summary judgments in favor of a defendant bank and a defendant bonding company in connection with the failure of a borrower-insured corporation to remit employee taxes. Although the court in *Hill* specifically recognized that the definition of the word "person" in section 6671(b) "has been read not to be exclusive," the court found no liability where the bank "did not manage the internal affairs of the corporation," and the bonding company likewise "exercised its rights under the bond but did not take over the internal affairs of the corporation." It seems clear that in accepting *Hill* and *Lumetta* and rejecting *Mueller*, the trial judge determined that Cooper did not have the degree of control over the internal financial affairs of G.T.O. to incur liability for its failure to remit employee taxes in this case.

B

■ We conclude that this holding is supported by the evidence. Cooper was never retained to manage G.T.O. and was never given authority to do so. His connection with the company was for the limited purposes of ensuring that G.T.O. would not continue to overdraw its account at the Aurora bank, and to verify that G.T.O. was making all expenditures claimed in its payout requests. These functions occupied a minimal amount of Cooper's time. After Cooper's cosigning authority ended, he acted to protect the interests of the Aurora Downs partnership by paying certain of G.T.O.'s creditors on behalf of the part-

nership in order to avoid any mechanics' liens against partnership property. These actions are irrelevant to the question of G.T.O.'s payroll taxes. In fact, Cooper himself had disbursed gross payroll checks from the partnership to G.T.O., so it is clear that G.T.O. always had an available source of revenue specifically intended for the withholding fund. We are satisfied that Cooper never had the kind of control over G.T.O. financial affairs which would require or even allow him to control the disposition of these funds. We therefore affirm the decision of the district court on the ground that Cooper was not a "person" within the meaning of that term as used in 26 U.S.C. §§ 6671(b) and 6672.

Having decided that Cooper was not within the intended reach of the term "person" under the penalty statute, we need not consider the question of the willfulness of his actions.

The judgment of the district court is affirmed.