**SOKAOGON CHIPPEWA COMMUNITY TRIBAL COUNCIL, Plaintiff and Counterclaim Defendant,**

v.

**UNITED STATES of America, Defendant and Counterclaim Plaintiff,**

v.

**Jimmy C. Landru, Jr., Additional Defendant of the Counterclaim.**

No. 94–C–0780.

United States District Court,
E.D. Wisconsin.

Feb. 25, 1997.

Kevin C. Potter, Brennan, Steil, Basting & MacDougall, Madison, WI, for Sokaogon Chippewa Community.

Rachel I. Wollitzer, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC, for U.S.

Jimmy C. Landru, Crandon, WI, for Jimmy C. Landru, Jr.

### DECISION AND ORDER

WARREN, Senior District Judge.

Now before the Court is the defendant's, the United States of America, Motion for Summary Judgment to collect an assessment for employment tax liabilities for the first three quarters of 1992 against the Tribal Council of the Sokaogon Chippewa Community and Mr. James C. Landru, Jr. For the following reasons, the motion is **GRANTED**.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This cause of action arose when the Sokaogon Chippewa Community's governing body, the Tribal Council, [hereinafter "Tribal Council"] challenged the United States' assessment of a trust fund recovery penalty against the Tribe for failure to pay employment tax liabilities for the first three quarters of 1992. The tax liability was incurred by the Tribe's pallet factory, known as Mole Lake Wood Industries, Inc. [hereinafter Mole Lake Wood]. Mole Lake Wood was a subsidiary of Sokaogon Development, Inc. [hereinafter "Sokaogon Development"]. Sokaogon Development was the principal economic development arm of the Sokaogon Chippewa Tribe. Sokaogon Development was established by a Resolution of the Tribal Council on May 24, 1989. Mole Lake Wood was then chartered on or about October, 1993, to engage in lawful activities under Chapter 1 80 of the Wisconsin Statutes, including operation of the pallet factory. However, neither Sokaogon Development nor Mole Lake Wood was ever officially incorporated under the statutes of Wisconsin or any other state.

This pallet factory was first discussed by the Tribal Council at a special meeting called on January 3, 1990. At that meeting, the resolution passed noted that the Sokaogon Chippewa Community recently engaged in the acquisition and operation of a pallet factory, which would be run by Mole Lake Wood. The purpose of the pallet factory was to provide employment for tribal members living on the reservation. The Tribal Council

agreed to mortgage a parcel of tribally owned non-federal trust property for $400,-000 to provide financing for the pallet factory. The loan papers were signed by both the Chair and Secretary of the Tribal Council and the President and Vice President of Mole Lake Wood.

Day-to-day operations of Mole Lake Wood were managed by a board of directors. The board of Sokaogon Development and Mole Lake Wood were always the same. As of the relevant time period, the board of directors of Mole Lake Wood consisted of James Landru, president; Raymond McGeshick, Jr., vice president; Thomas Smith; Jack Schaefer; and James Conway. While the first board of directors of Mole Lake Wood was appointed entirely by the Tribal Council, the subsequent boards, including this one, consisted of three members appointed by the Tribal Council and two members elected by the tribe.

During the relevant time period, the Tribal Council was comprised of Raymond McGeshick, Jr., chair; Debra VanZile, vice-chair; Paulette Smith, secretary; James Landru, treasurer; Elaine Burnett; and Eugene Poler. It is undisputed that Raymond McGeshick, Jr, and James Landru sat on both the Board of Directors of Mole Lake Wood and on the Tribal Council. The offices of Sokaogon Development were located in the tribal headquarters, while the office of Mole Lake Wood were at the pallet factory.

Sokaogon Development's Charter required that monthly financial statements of its activities be submitted to the Tribal Council. However, this was not done in any formal manner. By the fall of 1991, Mole Lake Wood was in financial trouble. The Tribal Council met and approved a plan whereby the Tribe's Grand Royal Casino would provide financial assistance to Mole Lake Wood to keep the pallet factory operational. In addition, the Tribe was having difficulty meeting its own payroll tax burdens. It was decided at that same meeting that the Tribe's Regency Resort Casino would transfer funds to help the Tribe meet its payroll tax obligations. Over $300,000 was transferred from

the casino to the pallet factory between September 1991, and July 1992.

In July 1992, the pallet factory was closed. It is not clear from the record who made the final decision to close the pallet factory, the Tribal Council or the Board of Mole Lake Wood. It is clear that the checkbook and bills from the pallet factory were returned to the Tribal Office and that someone there made the decision to continue to pay some of Mole Lake Wood's bills, including the $400,000 mortgage to Associated Bank, which the Tribal Council had guaranteed, some utility bills and some vendor bills. In addition, the Tribe and the Tribal Council were now in control of the assets of the pallet factory, some of which were sold to repay the bank note.

The Tribal Council was also attempting to pay the delinquent employment tax liabilities of Mole Lake Wood. On September 3, 1992, the Tribal Council paid $13,767,96 towards the fourth quarter 1991 liabilities. However, in early 1993, Tribal Council elections were held. Raymond McGeshick, Jr., and James Landru were voted out of office, and Arlyn Ackely and Wayne LaBine were voted in as replacements. The new Tribal Council voted not to continue paying the employment tax liabilities of Mole Lake Wood. Therefore, the employment tax liabilities of Mole Lake Wood for the first, second and third quarters of 1992 remain unpaid.

The United States Internal Revenue Service assessed the Tribal Council and Landru for the trust portion fund of the employment tax liabilities of Mole Lake Wood under 26 U.S.C. § 6672. The Tribal Council paid a portion of the tax due, pursuant to 28 U.S.C. § 1346(a)(1), then filed suit for a refund and statement of non-liability. Jurisdiction is conferred upon the court by 28 U.S.C. § 1340 and 26 U.S.C. §§ 7401 & 7402. The United States filed this motion for summary judgment to find James Landru and the Tribal Council responsible for unpaid unemployment tax liabilities pursuant to 26 U.S.C.S. § 6672. Landru has not contested his status as a responsible person under section 6672.

## II. DISCUSSION

### A. Summary Judgment Is Appropriate When There Is No Genuine Issue Of Material Fact.

The Court may only grant the defendant's motion for summary judgment if there is no genuine issue as to any material fact. Federal Rule of Civil Procedure Rule 56(c) states, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment shall be granted. *Local 1545, United Mine Workers of America v. Inland Steel Coal Co.*, 876 F.2d 1288, 1292 (7th Cir.1989). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Under the *Celotex* criteria, the United States, therefore, bears the initial burden of demonstrating that there are no material facts at issue. The United States, in its proposed findings of fact, has met its burden. The United States did include several conclusive findings of fact not directly supported by or citing to the record. Therefore, the Court will disregard those to proceed with the summary judgment motion.

It is important to note that the mere existence of some factual dispute does not defeat a summary judgment motion. "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only genuine issues of material and outcome determinative fact will defeat an otherwise proper motion for summary judgment. *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir.1995), *cert denied*, —— U.S. ——, 116 S.Ct. 1545, 134 L.Ed.2d 648 (1996). A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole. *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir.1990). Upon close examination of the plaintiff's and defendant's brief, there is no genuine issue of material fact.

The plaintiffs argue that there are issues of fact, including whether the Tribe had an entrepreneurial interest in Mole Lake Wood, whether it was the Tribal Council or Mole Lake Wood who could incur debt, whether the Tribal Council knew of the tax liabilities, and whether the Tribal Council relied on Landru to make sure all tax liabilities were paid. However, some of these issues are not in dispute, based on the record. The Tribe, later in its brief acknowledges its entrepreneurial interest in Mole Lake Wood, and its attempt to salvage the pallet factory when the factory could not pay its debts. The initial bank loan for the pallet factory was signed by both representatives of the Tribal Council and Mole Lake Wood. When Mole Lake Wood needed more money, it was the Tribal Council who decided that it should be in the form of a loan or equity investment from the Tribe, through one of its casinos. The only debts Mole Lake Wood incurred were with the consent and co-signature of the Tribal Council.

Therefore, the true issue here is knowledge: did the Tribe or Tribal Council know about the unpaid tax liability and willfully refuse to pay it? While ordinarily that would be an issue for the trier of fact, the facts of this case are unique. First, two members of the Board of Mole Lake Wood were also the Chair and Treasurer of the Tribal Council. Second, the Tribe is the undisputed owner of Mole Lake Wood. Finally, the other members of the Tribal Council stated in their depositions that they were unable to remember whether the issue of unpaid taxes was discussed.

In cases where the United States "has assessed a taxpayer for the non-payment of taxes under section 6672 [of the Internal Revenue Code], the taxpayer bears the burdens of production and persuasion to disprove his status as a responsible person who willfully failed to collect, account for, or pay over the taxes." *Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir.1994). Moreover, in cases such as this, in which the nonmoving party bears the burden of proof on a dispositive issue, that party also bears the burden of affirmatively demonstrating a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir.1994). Applying the *Celotex* criteria, the plaintiffs have failed to designate specific facts showing that there is a genuine issue for trial.

### B. The Tribal Council is Liable Under Section 6672.

Tribal liability is based on section 6672 of the Internal Revenue Code. Under 26 U.S.C.S. §§ 3102 & 3402, an employer must withhold federal social security and income taxes from their employees' wages. The taxes withheld constitute a special fund held in trust for the benefit of the United States. 26 U.S.C. § 7501(a). *Bowlen v. United States*, 956 F.2d 723, 726 (7th Cir.1992). If an employer withholds the taxes, the employee is credited with having paid the taxes even if the employer fails to turn them over to the United States. In such a case, the government only has recourse against the employer for the payment of the withholding taxes. *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978).

To protect against revenue losses incurred when withheld employment taxes are not remitted to the government, 26 U.S.C. § 6672 states:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a) (1995). This section is considered a 100% penalty, because the penalty is equal to the full amount of the tax collected but not paid over to the government. *Bowlen*, 956 F.2d at 725. Section 6672 was "designed to assure compliance by the employer with its obligation to withhold and pay the sums withheld, by subjecting the employer's officials responsible for the employer's decisions regarding withholding and payment to civil and criminal penalties for

the employer's delinquency." *Slodov,* 436 U.S. at 247, 98 S.Ct. at 1785. The United States assessed the Tribal Council and James Landru for the unpaid payroll taxes.

There are two requirements of section 6672. The first is that the person is a responsible person of the delinquent corporation. The second is that he must have willfully failed to carry out the responsibilities that the tax code imposes on him. *Bowlen,* 956 F.2d at 727. In order for the penalty to be imposed, both statutory requirements must be present. James Landru has not contested the assessment levied against him. He is both a responsible person and has willfully failed to carry out the responsibility the tax code imposed upon him. For the reasons discussed below, the Tribal Council, as the governing body of the Tribe, is also responsible under section 6672.

### 1. *Whether the Tribal Council Was A Responsible Person Under Section 6672.*

■ In determining who is a "responsible person," section 6671, lends some guidance:

> The term 'person', as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the act in respect of which the violation occurs.

26 U.S.C. § 6671(b) (1995). The Tribal Council is not a person, *per se.* However, courts have decided that the language defining person is broad enough to reach corporations and other artificial entities as well as individuals. In *Adams v. United States,* 504 F.2d 73, 75 (7th Cir. 1974), the court found that a lender could be a responsible person. In addition, Indian tribes have been held to be "responsible persons" under the definition of section 6672 for employee-related taxes including federal insurance contributions tax, unemployment compensation tax and income tax withholding. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States,* 845 F.2d 139, 143 (7th Cir.1988).

In a similar case before the Ninth Circuit, an Indian Tribe was held liable for taxes derived from the federal employment taxes of its casino employees. *In the Matter of Cabazon Indian Casino; Cabazon Indian Casino v. Internal Revenue Service,* 57 B.R. 398, 400 (1986). The casino in *Cabazon* was an unincorporated company, similar to Mole Lake Wood. *Id.* at 399. The court in *Cabazon* quotes a Supreme Court opinion which states, "the question of tax immunity cannot be made to turn on the particular form in which the Tribe chooses to conduct its business." *Id.* (citing *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 157 n. 13, 93 S.Ct. 1267, 1275 n. 13, 36 L.Ed.2d 114 (1973) (where the Tribe acquired "land beyond its reservation borders for the purpose of carrying on a business enterprise")). In this case, the Tribe used the non-trust land the pallet factory was on for the purpose of carrying on a business enterprise. Therefore, the fact that Mole Lake Wood was a somewhat separate entity from the Tribal Council does not automatically grant immunity to the Tribal Council. The Tribe and the Tribal Council will still be found to be responsible persons, under section 6672, if it is determined that they had the requisite knowledge and control.

One fact, standing alone, indicates that the Tribal Council did have the requisite knowledge and control. The Chair, Raymond McGeshick, and the Treasurer, James Landru, of the Tribal Council, were on the Board of Directors of Mole Lake Wood, and admitted knowledge of the unpaid employment taxes. This imputes knowledge to at least one-third of the Tribal Council, as they were the same people, who even in different roles, were aware of the accrued employment tax liabilities. However, the Court will proceed through the tests developed to determine who is a responsible person, so as to not unfairly hold the whole Tribe and Tribal Council responsible if it does not meet the standard.

When determining who is a responsible person, several criteria are considered. The most often cited is whether the person or group has the power to control the decision making process by which the employer allocates funds to other creditors in preference to its withholding tax obligations. *Bowlen,* 956 F.2d at 728. From September 1991 to July 1992, over $300,000 was transferred by the Tribal Council to Mole Lake Wood to pay

its bills. However, the IRS was not paid. In addition, after the close of the pallet factory in July 1 992, before the second or third quarter tax liabilities were due, the checkbook and bills of Mole Lake Wood were returned to the Tribal office. From that time on, bills of the pallet factory, including the loan to Associated Bank, utility bills and vendor bills were paid in preference to the IRS.

Moreover, responsibility is not based on exclusive control of funds, but upon significant control. *Id.* The Tribal Council decided to loan an additional $300,000 from one of its casinos to Mole Lake Wood. It had significant control of that money at the time of transfer. In addition, Raymond McGeshick and James Landru had control of the money after the transfer, as they were on the Board of Mole Lake Wood and had check signing authority. Ownership of stock or an entrepreneurial stake in the company, and ability to sign checks are two other indicia of responsibility. *Id.* The Tribe was the undisputed owner of Mole Lake Wood, and had an entrepreneurial interest to the extent of the $400,000 loan it had co-signed, and the additional $300,000 it had forwarded Mole Lake Wood from September 1991 to July 1992. Two members of the Tribal Council, Raymond McGeshick and James Landru, had check signing ability for Mole Lake Wood.

All those connected closely with the business to prevent default from occurring are considered responsible people under Section 6672. *Id.* The Tribal Council was supposed to receive monthly financial reports from Sokaogon Development, the parent company of Mole Lake Wood. These reports were required by the charter of Sokaogon Development. Lack of reasonable diligence regarding the financial affairs of a business by a responsible person does not excuse them from liability under section 6672. *Thomas,* 41 F.3d at 1116. These reports were not made in any formal manner. Yet, two of the Tribal Council members were on the Board of Mole Lake Wood and knew about its delinquent taxes. They could have prevented default from occurring. They did attempt to pay the delinquent taxes, until they were voted out of the Tribal Council.

Had the rest of the Tribal Council known what was occurring at Mole Lake Wood, they could have prevented default from occurring by recalling the Board of Mole Lake Wood, as was their right under the Charter of Sokaogon Development. The Tribal Council cannot now disclaim responsibility by citing their failure to know what was going on at a company in which they had a $700,000 investment.

Finally, the Seventh Circuit in *United States v. Charlton,* 2 F.3d 237 (7th Cir.1993) added the ability to take out loans on behalf of the company, the holding of corporate office, and the ability to hire and fire employees as other indicia of responsibility. *Id.* at 240. Tribal Council members co-signed the $400,000 start-up loan with Mole Lake Wood. The Tribal Council also decided to loan more than $300,000 of the Tribe's Casino money to Mole Lake Wood to keep the pallet factory operational. The Tribal Council did take out loans on behalf of Mole Lake Wood. The Tribal Council also appointed three of the five members (a voting majority) of the Board of Mole Lake Wood. In addition, two members of the Tribal Council sat on the Board of Mole Lake Wood: one appointed, one elected by the Tribe. Therefore, while the Tribal Council may no, have held corporate office,.the Tribal Council decided who would hold office. In addition, Tribal Council members did hold corporate office. The Tribal Council probably did not have the ability to hire or fire individual employees, beyond the Board of Directors. Nonetheless, the pallet factory did exist for the benefit of the Tribe and to provide employment for Tribal members.

The Tribal Council, by setting up a Board of Directors separate from itself, divested itself of day to day control of Mole Lake Wood. The real question is whether the Tribal Council had sufficient control. "[I]t is evident from the face of the section that [§ 6672] was designed to cut through the organizational form and impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax." *Godfrey v. United States,* 748 F.2d 1568, 1574 (Fed.Cir.1984) (citing *Pacific National Insurance Co. v. United States,* 422 F.2d 26, 31

and n. 12 (9th Cir.), *cert. denied,* 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970)). Here, it is not only James Landru, but the Tribe and the Tribal Council who are responsible for the failure to remit the withheld employment taxes. The Tribe was the owner of the pallet factory and it existed for the benefit of Tribal members. The Tribal Council appointed a majority of the members of the Board of Mole Lake Wood. Two of the Tribal Council members were on the Board of Mole Lake Wood. The Tribal Council's attempt to present Mole Lake Wood as a separate entity is not plausible. Mole Lake Wood was the Tribe and the Tribe was Mole Lake Wood. Therefore, the Tribe, and the Tribal Council as its governing body, are responsible for the unpaid tax liabilities of Mole Lake Wood.

2. ***Whether the Tribal Council's Actions were Willful.***

 The Tribal Council also meets the second criteria of section 6672: willfulness. Willfulness can be established by a showing of gross negligence involving a known risk of violation. *Ruth v. United States,* 823 F.2d 1091, 1093 (7th Cir.1987). "[A] responsible person can be liable if she '(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3)[she] was in a position to find out for certain very easily'." *Id.* at 1094–1095 (citing *Wright v. United States,* 809 F.2d 425, 427 (7th Cir.1987)). In this case, the Tribal Council ought to have known that there was a grave risk that withholding taxes were not being paid. Sokaogon Development, through and with Mole Lake Wood, was supposed to provide the Tribal Council with updates on the pallet factory and its financial status. Whether this actually occurred is in dispute. However, the Tribal Council cannot be released from liability simply by failing to provide necessary oversight. It is doubtful that an owner who has a $700,000 investment in a company would be so unaware of the company's financial problems. Yet the Tribal Council wants the Court to believe it was completely unaware. This is especially doubtful because two of the six members of the Tribal Council were on the Board of Directors of Mole Lake Wood. Even if the rest of the Tribal Council did not know, they should have, especially considering the fact that the Tribe as a whole was delinquent in its other withholding tax liabilities. That alone should have put the rest of the Tribal Council on notice that Mole Lake Wood, in the midst of other financial problems, was not paying its withholding taxes either. Finally, the rest of the Tribal Council was in a position to find out very easily whether withholding taxes were being paid. Ray McGeshick and James Landru both had offices at the Tribal Office, and according to the minutes, attended the Tribal Council meetings. A simple question by any of the other Tribal Council members would have solved the mystery of unpaid taxes, if there was a mystery at all.

In addition, it is undisputed that after the pallet factory closed, the checkbook and bills of the pallet factory were brought to the Tribal Office. This was in July, 1 992, before the second or third quarter taxes had ever become due. It is undisputed that the Tribe continued to pay other Mole Lake Wood bills, including utilities and the mortgage. Someone at the Tribal Office even made a payment of more than $13,000 towards 1991 Mole Lake Wood employment tax liabilities. It was only in early 1993, when the new Tribal Council was voted in, and Ray McGeshick and James Landru voted out, that the decision was made to stop paying the Mole Lake Wood tax liabilities. The Court concludes that the Tribal Council's actions constitute willfulness, when they ought to have known that there was a grave danger that withholding taxes were not being paid, and they were in a position to find out for certain verily easily.

III. *CONCLUSION*

Upon consideration of the United States' Motion for Summary Judgment, the memoranda and exhibits in support thereof, and any opposition thereto, **IT IS HEREBY ORDERED** that the United's States' Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that judgment be entered in favor of the United States and against the

Sokaogon Chippewa Community Tribal Council on the complaint; and it is further

**ORDERED** that judgment be entered in favor of the United States and against the Sokaogon Chippewa Community Tribal Council and Jimmy C. Landru, Jr. in the amount of $12,885.26, plus statutory interest.