Robert L. MOATS, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

Sidney ESTRIDGE, James F. O'Crowley, Jr. and Herbert Maslin, Third-Party Defendants.

No. 82–0455–CV–W–1.

United States District Court, W.D. Missouri, W.D.

May 26, 1983.

On Various Pending Motions May 26, 1983.

On Direction of Further Proceedings June 3, 1983.

Stanley P. Weiner, Grier, Swartzman & Weiner, Kansas City, Mo., for plaintiff.

Mark E. Nebergall, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Robert G. Ulrich, U.S. Atty., Kansas City, Mo., for defendant and third-party plaintiff.

David Rhodus, Morris, Larson, King, Stamper & Bold, Kansas City, Mo., for third-party defendant James F. O'Crowley, Jr.

John F. Michaels, Ryder, Rose & Frensley, Kansas City, Mo., Segal, Liling & Greenberg, New York City, for third-party defendant Herbert Maslin.

MEMORANDUM OPINION AND ORDERS GRANTING PLAINTIFF MOATS' MOTION FOR SUMMARY JUDGMENT AND DENYING THE GOVERNMENT'S CROSS–MOTION FOR SUMMARY JUDGMENT

JOHN W. OLIVER, Senior District Judge.

### I.

This Section 6672 [26 U.S.C. § 6672] case involves the validity of a 100% penalty assessed against plaintiff Moats in the amount of $29,903.91 to cover withholding taxes of Arlen Trophy Company (Arlen), located in Middlesex, New Jersey, a wholly owned subsidiary of Gateway Sporting Goods Company (Gateway), located in Kansas City Missouri.

In accordance with established practice, see *Kelly v. Lethert,* 362 F.2d 629, 635 (8th Cir.1966), plaintiff paid a small portion of the § 6672 assessment, claimed a refund, and, after the refund claim was denied, brought an action in this Court. The government counterclaimed for the full amount of the penalty assessed under Section 6672.

The case pends on plaintiff Moats' April 15, 1983 motion for summary judgment, appropriately supported by affidavits and deposition testimony, and on the government's May 5, 1983 cross-motion for summary judgment. As will be noted, the pending motions and the suggestions in support and in opposition establish that there are no genuine issues of material fact for trial within the meaning of Rule 56 of the Rules of Civil Procedure.

■ Plaintiff's motion will be granted and the government's cross-motion will be denied for the reasons stated in this memorandum opinion.

### II.

The government's brief accurately states the questions presented and the statutes involved as follows:

#### QUESTIONS PRESENTED

1. Whether plaintiff was a responsible person under 26 U.S.C. Section 6672.[1]

2. Whether plaintiff's failure to collect, truthfully account for and pay over the employment taxes of Arlen was willful.

#### STATUTES INVOLVED

Internal Revenue Code of 1954 (26 U.S.C.):

SEC. 6671. RULES FOR APPLICATION OF ASSESSABLE PENALTIES.

\*    \*    \*    \*    \*    \*

(b) *Person Defined.*—The term "person," as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

---

1. Section 6672, which we set forth in the text above, does not contain the words "responsible person." *Slodov v. United States,* 436 U.S. 238, 246, fn. 7, 98 S.Ct. 1778, 1784, fn. 7, 56 L.Ed.2d 251 (1978), observed that "[T]he cases which have been decided under § 6672 generally refer to the 'person required to collect, truthfully account for, and pay over any tax imposed by this title' by the shorthand phrase 'responsible person.' We use that phrase without necessarily adopting any of the constructions placed upon it in the decisions."

This Court has accordingly used the shorthand phrase in its statement of the question presented and throughout our discussion of the applicable law.

SEC. 6672. FAILURE TO COLLECT AND PAY OVER TAX, OR ATTEMPT TO EVADE OR DEFEAT TAX.

(a) Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

Plaintiff's motion for summary judgment is based upon factual data contained in the affidavits of plaintiff and of one Donald Farwell, a vice president of Gateway, the parent corporation of Arlen, the actual employer under duty to pay over the withheld taxes. Plaintiff also relies upon the deposition testimony of plaintiff and the deposition testimony of James F. O'Crowley, Jr., who was president of Gateway during the relevant periods of time. Both those depositions were noticed and taken by the government.

The government has not, by affidavit or otherwise, as authorized by Rule 56(e) of the Rules of Civil Procedure, attempted to set forth any specific facts which the government contends would show that there is a genuine issue for trial. Indeed, the government filed a cross motion for summary judgment. Its suggestions in opposition to plaintiff's motion and in support of its cross motion expressly state that "the government believes that the statement of facts contained in the plaintiff's brief is fairly accurate." The government's basic position is that it disagrees with plaintiff in regard to "the weight to be given much of the evidence submitted."

The government's quibbles concerning what it suggests might be hearsay contained in two paragraphs of plaintiff Moats' affidavit do not suggest that any *material* fact is in dispute within the meaning of Rule 56. We therefore find and conclude that the pending cross motions for summary judgment may properly be ruled on the undisputed factual data submitted in support of plaintiff's motion.

### III.

Plaintiff's statement of fact, which the government concedes is "fairly accurate," states the following:

In August, 1974, plaintiff Robert Moats was employed by Gateway Sporting Goods Company (Gateway) as its controller (Moats Aff., ¶ 1; Moats tr., p. 8). Moats reported to Mr. Robert Rogers, Gateway's Vice President-Treasurer, who in turn reported to third-party defendant J.F. O'Crowley, Gateway's President. Donald W. Farwell, the other corporate Vice President, also reported to O'Crowley (Moats Aff., ¶ 1). O'Crowley, in turn, reported to third-party defendant Sidney M. Estridge, who was Chairman of the Board and chief executive officer of Gateway, as well as a director of Arlen Trophy Company (Arlen) (Moats Aff., ¶ 1; Moats Tr., p. 17). Gateway's administrative personnel, except for Estridge, were located in Kansas City. Estridge maintained his office in New York City (Moats Aff., ¶ 1).

Arlen was a subsidiary of Gateway, located in New Jersey. It had its own officers and administrative personnel, including its own controller (Moats Aff., ¶ 2; Moats Tr., p. 12). In late 1974, Moats, O'Crowley, and Rogers went to Arlen's headquarters to review its operations and determine the source of the financial difficulties Arlen was experiencing. Shortly after the trip, Moats was designated to head a task force assigned to assist Arlen in correcting Arlen's financial situation (Moats Aff., ¶ 3).

As a result of the recommendation of the task force, Arlen's president requested and received the resignation of Arlen's controller. In January, 1975, Moats was asked to assume the position of acting controller for Arlen. He did so for a

period of approximately eight weeks, at the end of which time Arlen hired a new controller. During the eight-week period, Moats had authority to pay bills for Arlen and made certain that the payroll taxes were paid to the IRS (Moats Aff., ¶ 4). This eight-week period was the only period during which Moats exercised any authority over the financial affairs of Arlen (Moats Aff., ¶ 4).

In early 1975, Arlen hired Ronald James as its sales manager. He was shortly thereafter promoted to Vice President and General Manager. In these positions, James was responsible for Arlen's day-to-day operations, including the payment of federal withholding and FICA taxes (Moats Aff., ¶ 5). In mid-1975, Herbert Maslin became President of Arlen (Moats Tr., p. 12). He reported directly to the board of directors of Arlen (Moats Tr., p. 14).

During 1975, the managers of Gateway's subsidiaries were directed by O'Crowley to telephone Gateway headquarters periodically to report their cash position. As controller, Moats received these calls and passed the information on to O'Crowley and Estridge (Moats Aff., ¶ 6). Moats periodically received calls from James concerning Arlen's shortness of cash. James requested additional capital from Gateway. Moats advised James that he did not have authority to transfer funds to Arlen, but passed on James' requests to O'Crowley and Estridge (Moats Aff., ¶ 6; Farwell Aff., ¶ 13). Estridge advised Moats, through O'Crowley, that Gateway had no capital to provide to Arlen (Moats Aff., ¶ 6). Moats relayed this to James and advised him that he should discuss the matter directly with Estridge (Moats Aff., ¶ 6; Farwell Aff., ¶ 18).

During the fourth quarter of 1975, Moats learned from his conversations with James that Arlen was getting behind on its federal payroll tax deposits. Moats frequently urged James to make certain that the deposits were made timely (Moats Aff., ¶ 7). Moats notified O'Crowley and Estridge of the problem. Again, however, Moats was informed that Gateway had no capital to contribute to Arlen (Moats Aff., ¶ 7). Moats was aware of the potential liability of individuals for non-payment of these taxes, and so advised James (Moats Aff., ¶ 8; Farwell Af., ¶¶ 28–30; Moats Tr., p. 23).

In November or December, 1975, James released Arlen's controller and assumed all responsibility for making Arlen's cash disbursements, including federal payroll deposits (Moats Aff., ¶ 9).

In January, 1976, Moats was promoted to the position of Vice President and Treasurer of Gateway (Moats Aff., ¶ 10). In this position, Moats went to Arlen's headquarters to assist in preparing a forecast of Arlen's operations. During preparation of the forecast, James advised Moats that Estridge had directed him not to pay the payroll taxes until after Arlen had purchased the raw materials it required to stay in business (Moats Aff., ¶ 10). At this same time, Moats overheard telephone conversations between James and Estridge in which Estridge told James which of Arlen's bills to pay and which not to pay (Moats Aff., ¶ 11).

Though the forecast prepared reflected that payroll taxes had not been paid, and contained a budgeted amount for the taxes (Farwell Aff., ¶ 8), Estridge still refused to authorize Gateway to provide capital to Arlen (Moats Aff., ¶ 12). Moats discussed this matter with O'Crowley and O'Crowley told him that the decision rested solely with Estridge (Moats Aff., ¶ 12). In spite of this, during early 1976 Moats frequently advised James to pay the withheld taxes (Moats Aff., ¶ 12; Moats Tr., p. 32).

During the first quarter of 1976, James and Estridge discussed the cash needs of Arlen directly on a weekly or daily basis (Moats Tr., p. 20; O'Crowley Tr., p. 22). Moats overheard some of these conversations and was told of others by James (Moats Aff., ¶ 13). During late 1975 and the beginning of 1976, Moats repeatedly reminded O'Crowley and Estridge that the payroll taxes were not being paid (Moats Aff., ¶ 13). By January or Febru-

ary of 1976, Estridge directed Moats to stay out of Arlen's business, not to contact its personnel, and not to give any more advice that the payroll taxes should be paid (Moats Aff., ¶ 13); Moats Tr., p. 34; O'Crowley Tr. p. 23). Moats followed this directive (Moats Aff., ¶ 13; Moats Tr., p. 35; O'Crowley Tr., p. 23). Moats had no further involvement with Arlen until July, 1976, when Arlen was sold. At that time, Moats again advised that the taxes should be paid (Moats Tr., p. 25).

Except to the extent that he could be considered such during the eight-week period of early 1975 during which he acted as controller for Arlen, Moats was never an officer, employee, director or shareholder of Arlen (Moats Aff., ¶ 14; Farwell Aff., ¶ 4). Moats' duties at Gateway which related to Arlen were limited to reviewing Arlen's financial condition and cash needs and reporting these to his superiors within Gateway (Moats Aff., ¶ 15; Moats Tr., p. 18). At no time did Moats have authority to determine which of Arlen's creditors would be paid or what priority they would be given in receiving payments (Moats Aff., ¶ 16). Moats, in fact, had no input into decisions on these matters (Moats Aff., ¶ 16; Moats Tr. p. 32). This authority was exercised by Estridge and James (Moats Aff. ¶ 16; Moats Tr., p. 17). Nor did Moats have any authority over Arlen's controller, who was supervised by James (Moats Tr., p. 13). Moats, further, did not have authority to transfer Gateway capital to Arlen (Moats Aff., ¶ 16).

Merely as a matter of convenience, Moats, as well as certain other officers of Gateway, was eligible to sign checks on Arlen's checking account, as well as those of most of the other Gateway subsidiaries (Moats Tr., p. 15; Farwell Aff., ¶ 21). Moats could do so only for emergency purposes, however, and only when physically at the Arlen headquarters (Moats Tr., p. 15; Farwell Aff., ¶¶ 22–23). Moats could not have signed any check over $2,000 without a cosigner (Farwell Aff., ¶ 24; Moats Tr., p. 15). It was Farwell's opinion that if Moats had drafted a check on Arlen's account to the I.R.S. without authorization from his superiors, he would have been fired (Farwell Aff., ¶ 25). This was Moats' opinion as well (Moats Aff., ¶ 17).

Although the government contends generally that plaintiff's affidavit "contains rank hearsay and hearsay upon hearsay," and that plaintiff's "affidavit contains self-serving statements of opinion and conclusions," it is clear that the government's only specific complaints in regard to the factual data submitted by the plaintiff relate (1) to whether plaintiff had any authority in regard to the collection, accounting, or payment of any of Arlen's taxes [Defendant's suggestions, p. 5] and (2) the data which relates to conversations "between Ron James and Sidney Estridge relating to the issues herein" and to the "competence of evidence of over-heard telephone conversations" between the same two persons, as described in ¶¶ 11 and 13 of plaintiff's affidavit [Defendant's suggestions, p. 7].

We expressly find that our ultimate finding and conclusion that plaintiff was not a "responsible person" under § 6672 is not based in any way on any "self-serving statement of opinion" contained in plaintiff's affidavit or upon anything in plaintiff's affidavit concerning the telephone conversations between James and Estridge as described in ¶¶ 11 and 13 of plaintiff's affidavit. We further find that plaintiff's statement of facts which we have quoted above accurately summarizes the material factual data contained in the affidavits and depositions before the Court.

The plaintiff contends that:

The test for determining whether a person is a "responsible person" under Section 6672 was set forth by the Eighth Circuit in *Anderson v. United States,* 561 F.2d 162 (8th Cir.1977):

The test is whether the person had control of the disbursements of the taxpayer, that is, whether "he had the final word as to what bills should or should not be paid, and when." [citations omitted]

The government, for reasons which are never made apparent, is critical of the Eighth Circuit's statement of the applicable test in *Anderson,* suggesting that the Eighth Circuit's "primary reliance upon *Wilson v. United States,* 250 F.2d 312 (9th Cir.1958) is troublesome in that the relevant quotation is from the factual discussion of a criminal case." The government argues that *Anderson's* secondary reliance on *Hartman v. United States,* 538 F.2d 1336 (8th Cir.1976), was acceptable to it. The government's criticism of the Eighth Circuit's statement of the applicable test in *Anderson* is based on the notion that the *Anderson* test improperly contains a quotation from *Wilson,* which happened to be a criminal case. Specifically, the government argues that the Eight Circuit should not have quoted *Wilson* because "the *Wilson* court was making a statement of fact peculiar to that case [and was not] stating a general rule of law."

The government therefore argues that "the better reasoned rule was stated in *Hartman, supra,* which the Eighth Circuit cited secondarily in support of its statement of the rule." The government contends that "the articulation of the test for a responsible person in *Hartman, supra,* is much broader" than the test stated in *Anderson* and quotes the following as the only test to be applied in determining who may be a responsible person:

> If he has significant, albeit not necessarily exclusive, authority in the field of corporate decision making and action where taxes due the Federal Government are concerned; but he need not be an actual disbursing officer."

After listing the cases cited in *Hartman,* to which we will make later reference, the government attempts to argue that "surely, the test as stated in *Hartman, supra,* is the better reasoned rule and carries with it the great weight of authority."

Although the government never directly states that it believes that *Anderson* stated an entirely different test than that stated in *Hartman,* it is clear that the government apparently believes that substantially different tests are stated in those two cases.

For the government argues that if the test as stated in *Hartman,* rather than the test as stated in *Anderson,* is applied to the undisputed facts of this case, the government, rather than the plaintiff, would prevail. This is to be implied from the government's argument that "applying this test [of *Hartman*] to the facts, we see a much different result [than that which would be reached if the *Anderson* test is applied]."

The government's notion of how the applicable test should be stated is as untenable as its view of how § 6672 should be applied to the undisputed factual circumstances of this case. For it is clear that *Anderson* did not state any substantially different test than that stated in *Hartman. Anderson* simply used different words to express the same standard articulated in *Hartman. Anderson* obviously was not stating a new or different rule, for the *Anderson* court expressly stated that "this Court recently examined the purposes behind section 6672 and the procedures involved in a section 6672 assessment. *See Hartman v. United States,* 538 F.2d 1336 (8th Cir.1976)." Indeed, Judge Henley, the author of *Hartman,* was a member of the panel that decided *Anderson.*

*Anderson* cited *Hartman* to support its holding that "for a party to be liable for a penalty, equal to one hundred percent of the unpaid amount, for failure to pay over taxes under the statute, two requirements must be met: first, the party assessed must be a person required to collect, truthfully account for, and pay over the tax, and second, the failure to collect or to account for and pay over the tax must be willful. *See Hartman v. United States, supra,* 538 F.2d at 1340."

In its attempt to sustain its notion that the *Anderson* test is a substantially different and more narrow test than that stated in *Hartman,* the government conceded, as it must, that the Eighth Circuit in *Anderson,* in addition to its express reliance on *Hartman,* cited and relied upon *Haffa v. United States,* 516 F.2d 931, 935–36 (7th Cir.1975); *Adams v. United States,* 504 F.2d 73, 75 (7th Cir., 1974); and *Dudley v. United*

*States,* 428 F.2d 1196, 1198, 1202 (9th Cir. 1970). *Hartman,* of course, also cited and relied upon those same cases.

*Adams,* on the page of that opinion locally cited by *Anderson,* stated the following test:

> The "person" who is responsible for the payment of corporate taxes within the meaning of § 6672 is that individual who has the final word as to what bills should or should not be paid and when. *Turner v. United States,* 423 F.2d 448, 449 (9th Cir.1970).

*Turner,* unlike *Wilson,* was not a criminal case; it was a run-of-the-mill § 6672 action. *Dudley,* on the page of that opinion locally cited by *Anderson,* stated the standard in substantially the same language as that used by the Eighth Circuit in *Anderson.*

The sophistry of the government's basic argument of the applicable test is vividly illustrated by the position that the government took in *White v. United States,* 372 F.2d 513, 516, 178 Ct.Cl. 765 (Ct.Cl.1967). In *White,* the government successfully urged that the court adopt precisely the same test which it now contends was erroneously adopted by the Eighth Circuit when that court decided *Anderson.* *White* accurately observed that "in reaching a determination with respect to the person or persons upon whom to impose responsibility and liability for the failure to pay taxes, the courts tend to disregard the mechanical functions of the various corporate officers and instead emphasize where the ultimate authority for the decision not to pay the tax lies." The *White* court then stated:

> For this reason, *as the Government points out in its brief,* a responsible person is most frequently defined as a person who has "the final word as to what bills or creditors should or should not be paid and when." To that effect, see, e.g., [citation of numerous cases omitted (emphasis ours)]

*Haffa* and *Dudley,* cited and relied upon by the Eighth Circuit in both its *Hartman* and *Anderson* opinions, together with a host of other Section 6672 cases (which need not be cited), [see cases listed in 50 FPD 2d 931, key ¶ 2332 and 50 FPD 2d 127, 1982 pocket part, key ¶¶ 5202–5215, inclusive] simply underline the fundamental proposition that while the tests and standards to be applied in a Section 6672 action are frequently stated in slightly different language, such cases turn on the factual circumstances presented in each particular case in which the government attempts to assess the 100% penalty authorized by Section 6672.

Both *Hartman* and *Anderson,* on the particular facts of each case, affirmed judgments rendered in favor of the government. *Haffa,* on the other hand, held that one Cooper, the financial adviser of Aurora Downs Race Track, a partnership, could not be held as a "responsible person" for the payroll taxes of G.T.O. Steel Erectors, Inc., a construction company under contract to renovate certain facilities of the race track owned by the partnership. The government contended in *Haffa* that Cooper should be held to be a "responsible person" because under the undisputed facts, he was given and, in fact, exercised co-signing authority on checks drawn on one of the G.T.O. bank accounts. It was also undisputed that Cooper also processed "payments of G.T.O. invoices by the Aurora Downs partnership, including payroll invoices."

The *Haffa* court stated that "the key to liability under section 6672 is control of finances within the employer corporation: the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its withholding tax obligations." On the facts, the *Haffa* court noted that "control of payments to a corporate employer is not alone sufficient to raise a duty in connection with that corporation's employee taxes." The *Haffa* court affirmed the judgment of the district court that Cooper was not a "responsible person" for the reason that, on the facts, "Cooper was never retained to manage G.T.O. and was never given authority to do so;" that "Cooper never undertook any supervisory role respecting the accounting and bookkeeping of G.T.O. other than in relation to the one checking account with the Aurora bank, and he never exercised any control over preferences of one creditor to another;"

and that "Cooper never had the kind of control over G.T.O. financial affairs which would require or even allow him to control the disposition of these funds."

The *Haffa* court also noted that Cooper, after he learned that G.T.O. was not complying with the withholding tax law, in a manner quite similar to what plaintiff did in this case, advised persons who were, in fact, in actual control of the financial affairs of G.T.O. that:

> "Above all, you['d] better secure somebody and get a return prepared and filed because you could have serious problems if you fail to file any tax return." He also indicated that if funds were available, the liability should be paid when determined.

Under all of the factual circumstances, the *Haffa* court concluded that Cooper could not be held to be a "responsible person" and further stated that "having decided that Cooper was not within the intended reach of the term 'person' under the penalty statute, we need not consider the question of the willfulness of his actions."

*Dudley,* cited and relied upon by the Eighth Circuit in both *Hartman* and *Anderson,* reversed a district court's finding that the plaintiff in that case, who in fact held the title of president of the employer corporation, was the "responsible person" under Section 6672. Under the uncontradicted factual situation, it was clear that "up until June 10, 1960 [Dudley was] a person in charge of collecting, accounting for, and paying over withheld income and Social Security taxes of the Dudley Industrial Corporation." 285 F.Supp. 979 at 980. It was equally undisputed that after that date Dudley lost control of the corporation and that persons other than Dudley "exercised full control over the payment of checks in June, 1960" and that those persons "never elicited Dudley's advice as to which checks were to be paid."

The *Dudley* court concluded under the undisputed evidence, that after a June, 1960 date, Dudley simply did not have any "significant control" over the corporation or "the final word as to what bills should be paid." Accordingly, *Dudley* held that the plaintiff, even though he held the title of president of the corporation, could not properly be held personally liable as a responsible person under Section 6672 for the following reasons:

> Although Dudley retained the title of corporation president during the period in question, the holding of corporate office does not, *per se,* impose liability upon the officeholder.... Dudley may well have been in control of some facets of the operation of Dudley Industrial Corporation on June 20, 1960, but he did not have control over the payment of checks.... The purpose of the section is not served by imposing liability upon a corporate officer who had neither actual nor constructive knowledge of the nonpayment of tax until such time as he was unable, through circumstances beyond his control, to pay the tax.

It is neither necessary nor appropriate that we cite or discuss many additional cases.[2] As the court recognized in *Barrett v. United States,* 580 F.2d 449, 452, (Ct.Cl. 1978), "the question of who is a 'responsible

**2.** Certainly it is not necessary to discuss the three additional cases cited and relied upon by the government in its suggestions, for it is clear that all three of those cases focused primarily on the question of whether the alleged failure to collect and pay over taxes withheld from employees was "willfull" within the meaning of Section 6672. *Psaty v. United States,* 442 F.2d 1154, 1162 (3rd Cir.1971) stated that "the major issue at trial was whether or not Psaty had willfully failed to pay over the taxes to the Government." *Mazo v. United States,* 591 F.2d 1151, 1156 (5th Cir.1979) stated that "the real issue here is whether the officers assessed acted willfully in failing to discharge their duty

after October 6." And in *Garsky v. United States,* 600 F.2d 86, 88 (7th Cir.1979) it was clear that "plaintiff-appellant ('taxpayer') does not contest the District Court's finding that he is a 'responsible person' within the meaning of Section 6672."

Our finding and conclusion that plaintiff was not a "responsible person" means that we need not, and therefore do not, reach the question of whether plaintiff's alleged failure was "willful" within the meaning of Section 6672. It is obvious that if we were required to reach that issue, we would find and conclude that there simply is no credible evidence to support a finding of willfulness.

person' liable for a penalty assessment under section 6672 is a recurring one that has produced much litigation," and that the determination of such a question "is essentially a factual inquiry."

The factual circumstances in *Barrett* are substantially comparable to the undisputed factual circumstances of this case. The *Barrett* court noted that, on the facts, "plaintiff was not an officer or director of the company; nor was she an employee or stockholder of the company," that "plaintiff lacked authority to determine what creditors, including IRS and herself, should be paid and when they should be paid," and that "plaintiff tried to get her husband to pay the taxes in issue but was unsuccessful." The *Barrett* court further noted that, on the facts:

Plaintiff had no responsibility for making up the payroll. She had no authority over payment of the salaries of company employees. Creditors did not ask for her when inquiring about being paid. She had no responsibility for the preparation of tax returns for the company, nor did she sign any such returns. Plaintiff did not negotiate company contracts, bill customers, order supplies or hire and fire employees.

The *Barrett* court stated the applicable test in language quite comparable to the manner in which the applicable test was stated in *Hartman:* "The test is whether the person, regardless of company status, is in a position to exercise full authority over the financial affairs of the corporation, especially in the allocation of funds to creditors."

The government in *Barrett,* as the government in this case, relied primarily upon "plaintiff's authority to sign checks." The *Barrett* court rejected the government's argument by stating that:

Case law discloses that authority to sign checks, without more, is a weak pillar on which to rest a liability determination that a person is properly subject to a 100 percent penalty under section 6672. . . . The fact that plaintiff signed company checks is not in and of itself

sufficient to justify liability under section 6672.

*Fort v. United States,* 48 AFTR 2d 81–5744, ¶ 81–5191 (N.D.Ill.1981), on its facts, involved a holding company with a factual situation quite similar to that presented under the undisputed factual circumstances of this case. Under the factual circumstances involved in *Fort,* it was apparent that McCormick, one of the four officers of G.I.L. Enterprises, a holding company which owned all of the stock of G.I.L. Supermarkets, sought to recover a refund in regard to a Section 6672 penalty assessed against him in connection with the operation of a wholly owned subsidiary. The evidence in *Fort* established that another officer, one Simmons, who was a practicing accountant, "assumed responsibility for the payment of bills." The *Fort* court noted that "despite the fact that each officer technically had the authority to issue checks for the corporation, the undisputed evidence at the hearing established that Simmons had the primary responsibility for ordering goods and deciding what bills would be paid, keeping the corporation's financial records and preparing the tax withholding statements for G.I.L. Supermarkets employees."

The *Fort* court relied upon the Eighth Circuit's opinion in *Anderson* to support its holding that "it is the authority to control the disposition of funds, not the ministerial act of signing checks which determines the responsibility for withholding and paying the taxes." The *Fort* court, in rejecting the government's argument that McCormick should be considered a "responsible person" under Section 6672, held that "the mere fact that McCormick was a signatory on some of the corporate accounts does not mean that he had significant control over the financial decision-making. Without significant control he cannot be a responsible officer, for a corporate office, without more, does not impose any § 6672 duties."

Having rejected the government's legal arguments, we will state the reasons in the next part of this memorandum opinion why

the government's factual arguments are not tenable.

## V.

The government's principal factual arguments are stated as follows:

Moats, during the first calendar quarter of 1976, became a vice president and the treasurer of Arlen's parent corporation Gateway. (Moats Affidavit, ¶ 10). Moats had check signing authority on all of Arlen's bank accounts (Moats Dep. p. 15). The fact that Moats visited the Arlen premises during one of the periods in question means that he could have signed checks to pay other creditors. Mr. Moats' lapse of memory as to whether he actually signed such a check is understandable (Moats Dep. p. 22).

■ It is quite apparent under the cases discussed above that plaintiff's position as an officer of Gateway, Arlen's parent corporation, simply is not sufficient evidence upon which to predicate a factual finding that the plaintiff was a "responsible person" within the meaning of Section 6672. The government does not put in issue plaintiff's statements that he "was told to stay out of Arlen's affairs." The notion that such a statement of fact is contradicted by plaintiff's statement that he "visited Arlen often" is untenable. The reasons for those visits are fully explained in plaintiff Moats' undisputed affidavit.

The government's additional argument that "even if the Court finds that Moats had no authority after he was instructed to stay out of Arlen's affairs, it remains uncontroverted that Moats had authority during the fourth quarter of 1975," is equally untenable. The difficulty with the government's argument is that there simply is no substantial evidence to support a finding that Moats, in fact, "had authority during the fourth quarter of 1975."

For the reasons stated in footnote 2, it is not necessary that we consider the government's argument in regard to whether Moats alleged failure was "willful." We reiterate that if we had been required to reach that question, we would have made appropriate findings in favor of Moats and against the government in regard to that issue.

For the reasons stated, it is

ORDERED (1) that plaintiff's motion for summary judgment should be and the same is hereby granted. It is further

ORDERED (2) that the government's cross motion for summary judgment against plaintiff Robert L. Moats should be and the same is hereby denied. It is further

ORDERED (3) that the Clerk, in accordance with Rule 58 of the Federal Rules of Civil Procedure, prepare on a separate document a judgment that will reflect the Court's ruling on the above motions. The Clerk, however, shall not enter such a judgment until directed by further order of the Court. It is further

ORDERED (4) that within ten (10) days of this Order, plaintiff shall advise the Court whether plaintiff intends to seek an award of fees and other expenses as provided in 28 U.S.C. § 2412(b).

If plaintiff advises the Court that such an application will be filed, the Court will direct further proceedings under which the time for any appeal from the judgment entered on the orders entered this day and any judgment under which fees and expenses may be awarded or denied under 28 U.S.C. § 2412(b) will be coordinated. See and compare *Obin v. Dist. No. 9 of Intern. Ass'n., etc.,* 651 F.2d 574 at 584 (8th Cir. 1981).

## ON VARIOUS PENDING MOTIONS

### I.

We have this day entered orders granting plaintiff Moats' motion for summary judgment and denying the government's cross-motion for summary judgment. Review of the files and records in this case in connection with our determination of those motions established that various other motions are pending, only one of which may presently be ruled on the merits. That motion will be ruled and orders will be entered in regard to other pending motions which will

direct further proceedings so that all other pending motions may later be ruled on their merits.

## II.

The only motion in posture for present ruling on the merits is plaintiff's April 13, 1983 motion to dismiss the cross-claim of third party defendant Herbert Maslin against plaintiff. The cross-claim which plaintiff seeks to have dismissed was filed by third party defendant Maslin on April 8, 1983 against plaintiff Moats and third party defendants Estridge and O'Crowley. That cross-claim prays for judgment against Moats, Estridge, O'Crowley, and James (who is not a party to this action) "for all sums which Maslin is required to pay to USA."

Plaintiff's suggestions in support of his motion to dismiss primarily rely on the holding and rationale of Judge Pettine's decision in *Di Benedetto v. United States,* 35 AFTR 2d 75–1502, ¶ 75–692 (R.I.1974). Third party defendant Maslin's suggestions in opposition, filed April 22, 1982, rely primarily on *Garity v. United States,* 46 AFTR 2d 80–5154, ¶ 80–5143 (E.D.Mich.1980). We have considered those cases and the briefs in support and in opposition to the pending motion. We have also considered the affidavit of third party defendant Maslin attached to his suggestions in opposition.

The *Garity* case, the only case upon which third party defendant Maslin relies, did not "clearly [hold] that a taxpayer can seek indemnification under state law in a section 6672 proceeding." The motion to dismiss the cross-claim involved in *Garity* was filed by the government rather than the plaintiff in that case. Judge Freeman actually held that he could not reach the merits of the government's motion because "it was indeed difficult to see that the Government has any real stake in the outcome of the cross-claim so as to entitle it to assert the motion it presently seeks to place before the Court." It is thus clear that what was said in *Garity* concerning a cross-claim based "upon theories of fraud and breach of contract" is pure dictum.

Third party defendant Maslin's cross-claim against plaintiff Moats was not based upon any theory of fraud, as was the *Garity* cross-claim. Nor did the cross-claim involved in this case attempt to allege that plaintiff Moats made any sort of an oral promise to third party defendant Maslin that could be said to allege "an implicit, if not an explicit, agreement by plaintiff ... to indemnify Maslin against all liability for alleged failures by Arlen Trophy Company ("Arlen") to collect, account for and pay over withholding taxes to the Internal Revenue Service," as stated in third party defendant Maslin's suggestions in opposition. The cross-claim involved in this case simply does not contain any allegation in regard to any alleged promises made to or by anyone.

It should further be noted that the affidavit of Herbert Maslin attached to his suggestions in opposition does not mention any such alleged oral promise. Indeed, that affidavit makes clear that whatever letter Maslin may have received was signed "on behalf of Arlen" by a person other than plaintiff Moats. Paragraph 4 of that affidavit stated that after Maslin learned of Arlen's failure "to withhold and pay taxes, he complained to Estridge and the other officers" and that "in response to my complaint, Estridge signed a letter on behalf of Arlen, whereby Arlen promised that it would pay all assessments against me resulting from the failure of the other officers to collect, account for, and pay over withholding taxes."

It is thus apparent that even if it is assumed solely for argument's sake that the dictum in *Garity* may be an accurate statement of law, the cross-claim pleaded by third party defendant Maslin in this case is not the same sort of cross-claim considered by Judge Freeman in *Garity.*

In short, we need only add that we agree with plaintiff Moats that the rationale of *Di Benedetto* is applicable to this case. The practice and procedures developed over the years to test the validity of a § 6672 assessment were not and are not designed for, and should not be complicated by, collateral litigation that may be institut-

ed by and between various persons who may be determined to be "responsible persons" in a particular case. An order granting plaintiff Moats' motion to dismiss third party defendant Maslin's cross-claim against him will accordingly be entered.

### III.

Third party defendant Maslin included a "counterclaim against USA" in his answer filed April 8, 1983. On May 24, 1983, the government filed a motion to dismiss that counterclaim for lack of jurisdiction.

■ The government's motion is not in posture for ruling for the reason that third party defendant Maslin, under Local Rule 13, has until June 3, 1983 within which to file suggestions in opposition to the government's pending motion. An order will therefore be entered granting third party defendant Maslin until June 3, 1983 within which to file suggestions in opposition to the government's motion.

### IV.

A more complicated situation exists in regard to third party defendant O'Crowley's April 15, 1983 motion for summary judgment and the government's cross-motion for summary judgment against that third party defendant. Third party defendant O'Crowley's suggestions in support of his motion stated that:

> Following that pretrial conference [held in this case on March 31, 1983], third party defendant James F. O'Crowley, Jr. (hereinafter O'Crowley) learned that the Internal Revenue Service had taken action to effect collection of the amounts claimed to be due in this case through offsets against refunds otherwise due O'Crowley in connection with his income taxes. According to the attached Form 5204, Record of Accounts, from the Internal Revenue Service, dated April 6, 1983, O'Crowley was informed that the total amount collected by the government is $41,040.00. Accordingly, it is now necessary for O'Crowley to counterclaim for refund in this action so that he may have complete relief upon the issues pending before this Court.

O'Crowley's motion for leave to amend his answers so as to include a counterclaim will be filed shortly.

■ Those suggestions further stated that "the better practice would be to delay the motion for summary judgment until the pleadings, with respect to the counterclaim are complete." We agree. It should be noted, however, that third party defendant O'Crowley, rather than promptly filing a motion for leave to amend his answer to include an appropriate counterclaim, requested that the Court consider his pending motion on its merits "and to enter an interlocutory order thereon, so as to enable O'Crowley to have complete relief with respect to the counterclaim for refund." The entry of such an interlocutory order, should it be determined that O'Crowley should prevail, would not grant him "complete relief" under the circumstances now presented.

In light of the fact that an order will be entered requiring the government to take further action in connection with the pending motions for summary judgment filed in regard to third-party defendant O'Crowley, an order will be entered requiring third party defendant O'Crowley to file a motion for leave to file his amended answer and counterclaim in order that, if appropriate, final, rather than interlocutory, orders may be entered in regard to the pending motions for summary judgment.

### V.

Although the government, on May 5, 1983, filed a cross motion for summary judgment in regard to third-party defendant O'Crowley, it stated on page 13 of its suggestions in support of that motion that:

> Third-party defendant O'Crowley states in his moving papers that no genuine issue of material fact remains and that the Court can grant summary judgment in his favor (p. 1 of Motion). The government submits that if the Court decides adversely to its cross-motion that it would be inappropriate to grant O'Crowley's motion for summary judgment because a genuine issue of material fact does exist.

And, in the conclusion of its suggestions, the government stated:

> Based on the foregoing the United States respectfully requests that this Court grant summary judgment in its favor and against third party defendant O'Crowley. In the alternative, the Government requests that third party defendant O'Crowley's motion for summary judgment be denied due to the existence of a genuine issue of material fact.

Third party defendant O'Crowley's May 11, 1983 response to the government's suggestions properly noted that the government did not file or otherwise present any additional affidavits or deposition testimony, either in support of its cross motion for summary judgment or in opposition to third party O'Crowley's motion for summary judgment.

The government's attention is therefore directed to that portion of Rule 56(e) of the Rules of Civil Procedure which provides in its pertinent part that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The quoted portion of subdivision (e) was added to Rule 56 in 1963. Numerous Eighth Circuit cases have since recognized that Rule 56(e) means what it says. *See,* for example, *Lyons v. Board of Ed. of Charleston, Etc.,* 523 F.2d 340, 347 (8 Cir. 1975), which quoted the following from *Willmar Poultry Co. v. Morton-Norwich Products, Inc.,* 520 F.2d 289, 293 (8 Cir. 1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1975):

> Summary judgment is always warranted where the party resisting the motion does so by relying solely upon his pleadings and submits no evidence to rebut the moving party's conclusive demonstration of absence of a genuine issue of material fact. Fed.R.Civ.P. 56(e) mandates affirmative action by a party opposing such a motion. Failure to take such action justifies a court in entering summary judgment, * * * (Footnote omitted).

*Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8 Cir.1981), illustrates the impact of the failure of the party opposing a motion for summary judgment to challenge the factual data contained in an affidavit filed in support of a motion for summary judgment. After noting that Rule 56(e) requires a resisting party to set forth specific facts that can be said to raise a genuine issue of fact for trial, the *Burst* court held that "since Burst failed to challenge Peter Coors' affidavit, the district court correctly concluded that there was no genuine issue of fact concerning the use Coors made of the information in Burst's application."

The Eighth Circuit's construction of Rule 56(e) is consistent with the construction placed on that rule by all the Circuits. It is appropriately stated in ¶ 56.11[3] of Moore's *Federal Practice* that a party opposing summary judgment "may not hold back his evidence until trial; he must present sufficient materials to show that there is a triable issue." See also Section 2727 of Wright & Miller, *Federal Practice and Procedure,* in which it is stated that "the parties on a summary judgment motion must fully disclose what the evidence will be on the alleged issues and [that] a party may not withhold what he intends to use at trial."

The government's suggestion in support of its alternative argument in opposition to third-party defendant O'Crowley's motion that "a question of fact exists which precludes the granting of summary judgment in O'Crowley's favor" does not even attempt to point to any specific fact which the government contends is a genuine issue for trial. Indeed, the government argues that "the set of facts contained in [O'Crowley's] affidavit ... support the Government's case to the point that it has cross moved for summary judgment."

It is clear that the government relies upon the fact that O'Crowley "was Chairman of the Board of Arlen," upon the fact

that "he knew the taxes were not paid," and upon the fact that "he was a signatory on the Arlen bank accounts" to support its legal argument that those facts, and the inferences to be drawn from those facts, provide a sufficient basis for this Court to find and conclude that O'Crowley was a "responsible person" within the meaning of § 6672. Indeed, without attempting to dispute any specific fact contained in O'Crowley's affidavit and in the other supporting data relied upon by O'Crowley, the government simply states in highly conclusory language that "the United States submits that if the Court cannot grant the Government's cross-motion for summary judgment, that it deny O'Crowley's motion for summary judgment due to the existence of a genuine issue of fact."

In *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979), the Eighth Circuit reiterated its frequently stated view that "summary judgment is a harsh remedy and should be granted sparingly." The *Roberts* court, of course, added that "On the other hand, courts should not be unreasonably niggardly in its use [of Rule 56] lest the purpose of the rule, which is to avoid needless trials, be defeated." The government has not attempted to explain why it attempts to take a different procedural position in regard to the cross-motions which pend in regard to O'Crowley from the position it took in regard to the cross-motions for summary judgment which were filed in regard to plaintiff Moats. With respect to the latter, the government conceded that there were no genuine issues of fact for trial and did not attempt in any way to assert an alternative position that Moats' motion for summary judgment should be denied because of the existence of a genuine issue of material fact.

■ Regardless of the apparent inconsistency in the government's position in regard to the cross motions for summary judgment that relate to O'Crowley and the cross motions for summary judgment that relate to Moats, we are satisfied that part of the implicit teaching of *Roberts v. Browning* and other familiar Eighth Circuit cases is that a district court should proceed with less than deliberate speed with Rule 56

motions and, consistent with that end, design effective procedures which clearly focus a resisting party's attention to the consequences of a failure to comply with the requirements of Rule 56(e).

■ We are satisfied that what the government has stated in its suggestions in opposition to O'Crowley's motion for summary judgment is not sufficient to establish the existence of a genuine issue for trial within the meaning of Rule 56. We are also satisfied, however, that it is appropriate that this Court afford the government a second reasonable opportunity to set forth any specific facts which it believes will show the existence of a genuine issue for trial, as contemplated by Rule 56(e).

It may well be that the government, after appropriate review, will decide to take the same position in regard to the O'Crowley cross-motions for summary judgment as it took in regard to the Moats' cross-motions for summary judgment. If so, the Court, after O'Crowley will have obtained leave to file his amended answer and amended counter-claim, will rule the pending motions.

If, on the other hand, the government elects to file affidavits or other pertinent Rule 56 material in opposition to O'Crowley's motion for summary judgment, the Court will consider that data and determine whether a genuine issue in regard to any material fact is, in fact, presented for trial. In short, the Court will proceed in accordance with established Rule 56 practice.

That practice is set forth in Section 2725 of Wright & Miller, *Federal Practice & Procedure,* a section of that work specifically approved by the Eighth Circuit in *Roberts v. Browning, supra.* Section 2725 directed specific attention to the third sentence of Rule 56(c), which provides for the immediate rendition of a judgment in the event that the matters considered by the court on a motion for summary judgment disclose "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The authors then added:

This provision, which is the very heart of the summary judgment procedure, demonstrates that the principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists. If no such issue exists, the rule permits the immediate entry of judgment.

The same thought is reiterated later in the same section when the authors stated that:

> . . . [T]he inquiry on a motion for summary judgment is whether a "genuine issue as to any material fact" exists. Accordingly, in the event there is a real dispute as to the facts, it initially must be determined whether the facts in issue are material. A dispute as to an immaterial fact does not preclude summary judgment.

And, finally, Section 2727 summarizes the procedures anticipated in connection with a motion for summary judgment. It is there stated that:

> It should be noted from the preceding discussion that both the movant and the adversary at a summary judgment hearing generally will make a presentation regarding the existence or non-existence of a factual dispute. The movant will seek to demonstrate that there is no genuine issue as to any material fact; the opposing party will attempt to show the existence of a factual dispute as a basis for the court's denial of the motion.

We trust that the government will understand the duties imposed on it by Rule 56 from what we have detailed in this memorandum opinion. An order will be entered to afford the government an additional opportunity to decide whether it wishes to present any material in opposition to O'Crowley's motion for summary judgment made pertinent by Rule 56 of the Rules of Civil Procedure.

## VI.

For the reasons stated, it is

ORDERED (1) that plaintiff's motion to dismiss the cross-claim of third-party defendant Herbert Maslin, as the same is asserted against plaintiff Moats, should be and the same is hereby granted. It is further

ORDERED (2) that in accordance with Local Rule 13, third-party defendant Herbert Maslin shall, on or before June 3, 1983, prepare, serve and file any suggestions he may have in opposition to the government's May 24, 1983 motion to dismiss that third-party defendant's counterclaim for lack of jurisdiction. It is further

ORDERED (3) that third party-defendant James F. O'Crowley, Jr., shall, on or before June 3, 1983, prepare, serve and file a motion for leave to file an amended answer and amended counterclaim. A copy of the proposed amended answer and amended counterclaim shall be attached to that motion.

Third-party defendant James F. O'Crowley, Jr., shall contact all other counsel in the case to find out whether any party has any objection to third-party defendant James F. O'Crowley, Jr., filing an amended answer and amended counterclaim. If no party has any objection, as is to be anticipated, that fact shall be stated in the suggestions in support of the motion so that leave to file an amended answer and amended counterclaim may be promptly granted. It is further

ORDERED (4) that the government is granted leave to prepare, serve and file on or before June 15, 1983 any affidavits or other material made pertinent by Rule 56, Federal Rules of Civil Procedure, in opposition to the third-party defendant James F. O'Crowley, Jr.,'s motion for summary judgment or in support of the government's cross-motion for summary judgment against third-party defendant James F. O'Crowley, Jr.

The government shall also file supplemental suggestions on that date in connection with said cross-motions for summary judgment in which the government shall state its position in regard to whether it contends that there is any genuine material issue for trial and, if so, to direct the Court's attention to the specific facts which the government believes support such a position.

If the government, upon reconsideration, wishes to withdraw its alternative position that an issue of material fact exists which precludes this Court from ruling the cross-motions for summary judgment, it shall so state in order that both those pending motions will be in appropriate posture for ruling on their respective merits.

## ON DIRECTION OF FURTHER PROCEEDINGS

Plaintiff, acting in accordance with Order (4) entered in the above case on May 26, 1983, has advised the Court that plaintiff intends to seek an award of fees and other expenses as provided in 28 U.S.C. § 2412.

Orders will therefore be entered that will establish a time table for (1) the filing of plaintiff's Section 2412 application and (2) for the filing of the government's response. A third order will be entered which will establish the procedures under which the parties shall make a good faith effort to reach an agreement in regard to the amount of fees and expenses that may be awarded under Section 2412 in the event the government does not oppose plaintiff's Section 2412 application or in the event the Court should determine that plaintiff's Section 2412 application should be granted.

Counsel for the plaintiff is therefore directed under Order (3) that before plaintiff files his Section 2412 application on or before June 15, 1983, counsel for plaintiff shall advise counsel for the government exactly what plaintiff intends to include in the itemized statement in support of plaintiff's application, as required by Section 2412, in order that the parties may attempt to reach an agreement at least in regard to the amount of fees and expenses that may be awarded under the circumstances.

■ It is to be noted that when the Congress passed Section 2412 it contemplated that the government might not oppose an application for fees and expenses in a particular case. *See* 5 U.S.Code Congressional and Administrative News, 96th Congress, Second Session 1980, pages 4993, 4997, of the legislative history of Section 2412 where it was stated that "it is intended that if the government does not oppose an application

for fees, the award should be granted." It would be our view, however, that the government would retain the right to contest the amount of fees and expenses even though it might not oppose an award of reasonable fees. Hence, the parties in any event should attempt to reach an agreement in regard to the amount of fees that may be awarded in this case.

If the parties reach an agreement in regard to both the question of (1) whether plaintiff is entitled to a Section 2412 award of fees and expenses and (2) in regard to the question of the amount of fees and expenses which should be awarded under the circumstances, plaintiff's application shall state the parties' agreement and the parties shall present an agreed order which will implement the full agreement of the parties.

If, on the other hand, the government intends to resist plaintiff's Section 2412 application on the merits, the parties shall nevertheless attempt to reach agreement on the amount of fees and expenses that may be awarded in the event, but only in the event, the Court should grant plaintiff's Section 2412 application.

The procedure contemplated by Order (3) has been successfully followed in many cases for the purpose of eliminating the necessity for any evidentiary hearing in regard to the amount of fees and expenses to be awarded. We are confident that counsel for both sides will keep in mind the recent admonition of the Supreme Court in *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle .the amount of a fee.

The ability to reach an agreement in regard to the amount of fees and expenses that may be awarded under Section 2412 is enhanced by the express provision of Section 2412(d)(2)(A) which provides that "the fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not

be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."

The parties are to understand, of course, that any agreement that they may reach in regard to the amount of fees and expenses shall not in any way affect the government's right to maintain a position that no fees and expenses should be awarded under the circumstances of this case. It is therefore

ORDERED (1) that, on or before June 15, 1983, plaintiff shall prepare, serve, and file his application for fees and other expenses in accordance with the requirements of 28 U.S.C. § 2412. It is further

ORDERED (2) that, on or before June 30, 1983, the government shall prepare, serve and file its response to plaintiff's Section 2412 application. It is further

ORDERED (3) that before plaintiff formally files his Section 2412 motion on or before June 15, 1983, counsel for the plaintiff and counsel for the government shall attempt to reach an agreement in regard to the amount of fees and expenses that may be awarded in accordance with what is stated above. It is further

ORDERED (4) that if the parties need an extension of time within which to comply with the above orders, particularly Order (3), they shall agree upon a form of order which will set forth an agreed amended time schedule for approval of the Court.