Harold ROTH, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 81 CV 2159 (ERN).

United States District Court,
E.D. New York.

July 29, 1983.

Field, Lomenzo & Turret, P.C. by David A. Field, New York City, for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for defendant; Michael A. Mulqueen, Asst. U.S. Atty., Brooklyn, N.Y., and James M. Shaker, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., of counsel.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff ("Roth") commenced this action to obtain a refund of $100 he paid in partial satisfaction of a federal tax assessment and lien levied against him in the sum of $59,-723.05. The assessment was made on October 27, 1967, as a 100% penalty pursuant to the provisions of Section 6672 of the Internal Revenue Code of 1954 ("Code"), on the grounds that Roth had willfully failed to collect, truthfully account for, and pay over withholding and Federal Insurance Contributions Act taxes due and owing from the U.S. Hoffman Can Corp. ("Hoffman Can") for the second quarter of 1965, which ended June 30 of that year. The Government responded to Roth's action by asserting a counterclaim, pursuant to Section 7401 of the Code, for a judgment against Roth in the amount of the outstanding assessed balance due, namely, $59,623.05, plus any statutory additions. Following a bench trial of the issues of fact and law, the Court rejects plaintiff's challenge to the assessment and judgment will be directed for the Government on its counterclaim. This decision constitutes the Court's findings and conclusions pursuant to Rule 52(a), F.R.Civ.P.

The following facts are not in dispute. In 1964 and 1965, and for some years prior, Roth was president and chairman of the board of directors of U.S. Hoffman Machinery Company ("USH"), a publicly traded corporation, and owned 5 to 6% of its stock. In 1957 USH acquired Fein Can Co. and changed the latter's name to U.S. Hoffman Can Corporation. Roth became president and chairman of the board of directors of Hoffman Can and the owner of at least 20% of its stock, and held the position of president until 1964, when Irving Holtz, who had been vice-president, became president. The other officers of Hoffman Can were Morton Singer, treasurer, and Robert Hirsch, secretary. Its business was the manufacture of cans for the paint and oil industries, and Roth was active "to some extent" in the company, describing his role as formulating "major policy."

In the early 1960's, Hoffman Can became involved in a long strike with the Teamsters' Union. Roth eventually negotiated a settlement but by 1963 the company was not making any money and was in "deep financial trouble." The company's Brooklyn plant was closed and to save money the business was moved in 1963 to Hoffman Machinery's premises in Newark, New Jersey. Plate metal and secondary tinplate

needed for manufacturing operations were being obtained on a "loan" basis. Breakdowns of machinery continually halted production and by 1964 sales had declined to some 3 to 4 million dollars. At this juncture, Talcott, a commercial factoring concern which had been financing Hoffman Can before Hoffman Machinery acquired it, placed a representative at the plant to monitor all sales and receipts. To secure repayment, all assets of Hoffman Can were pledged to Talcott; and advances were made on a daily basis depending on sales and receipts.

During the second quarter of 1965 events occurred which ultimately led to this action. At the end of June Talcott took over complete control of Hoffman Can, retaining only Jerry Sobel, its comptroller, to straighten out remaining business matters. During that final quarter Talcott had been advancing on a daily basis only enough funds to pay employee salaries on a "net" basis and invoices for materials needed to complete outstanding orders. Roth and other supervisory personnel left Hoffman Can at the end of June 1965. On July 15, 1965 the quarterly return for federal income and social security taxes supposedly withheld from employees' wages during April, May and June 1965 was due to be filed. No report was filed by Hoffman Can and no withholding payment was made to the Government.

Section 6672 of the Internal Revenue Code provides that "[a]ny person" required to collect, or truthfully account for and pay over any tax, including those involved here, who fails to perform that duty, is liable for the total amount "not paid over." Section 6671(b) defines "person" to include "an officer or employee of a corporation, . . . who as such officer or employee . . . is under a duty to perform the act in respect of which the violation occurs." *See generally Slodov v. United States,* 436 U.S. 238, 243–46, 98 S.Ct. 1778, 1783–84, 56 L.Ed.2d 251 (1978).

Assessment of a tax penalty under Code § 6672 creates a prima facie case of liability against a plaintiff in a tax collection action. *See United States v. Lease,* 346 F.2d 696 (2d Cir.1965). Accordingly, the burden rested upon Roth to prove by a preponderance of the evidence that he was not a responsible person and that he was not willful within the meaning of Section 6672. *United States v. Lease, supra; Copperman v. United States,* 78–2 U.S.T.C., para. 9579 (E.D.N.Y.1978); *Lesser v. United States,* 368 F.2d 306 (2d Cir.1966); *United States v. Rexach,* 482 F.2d 10 (1st Cir.1973); *Psaty v. United States,* 442 F.2d 1154 (3d Cir.1971); *Liddon v. United States,* 448 F.2d 509 (5th Cir.1971); *Anderson v. United States,* 561 F.2d 162 (8th Cir.1977).

Roth attempts to meet his burden by contending that during the second quarter of 1965 he had no ability to direct or control the finances of Hoffman Can. In that period, he maintains, it was Talcott who "determined how much money the Company received and where it went." Pl. Post-Trial Mem. at 4. Asserting that Talcott (long non-existent) never advanced the funds requested by Hoffman Can for the payment of withholding and FICA taxes, Roth relies on *Adams v. United States,* 504 F.2d 73 (7th Cir.1974), for the proposition that where the finances of a company are controlled by an outside lender, that entity is the one the Government should pursue for a violation of § 6672, because the lender has the final word as to what bills should be paid or not paid. *Id.* at 75.

A close reading of the *Adams* case reveals that the court did not hold that the outside lender was the only party the Government should pursue, as Roth suggests. The court simply decided that the lender was improperly granted summary judgment on its contention that it was not a "person" within the meaning of § 6672 who could be sued in addition to an officer of the company which had failed to pay over the federal taxes withheld from its employees. Indeed, the court recognized "that the responsibility for nonpayment of the tax includes *all those so connected with the business* as to be responsible for the performance of the act in respect of which the violation occurs." *Id.* at 75–76, emphasis supplied. Stated differently, a responsible

person has been construed to include any person with significant control over the corporation's business affairs who participates in decisions concerning payment of creditors or disbursal of funds. *Kalb v. United States,* 505 F.2d 506 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975); *Copperman v. United States, supra; Silberberg v. United States,* 355 F.Supp. 1163 (S.D.N.Y.1973); *Monday v. United States,* 421 F.2d 1210 (7th Cir.1970); *Adams v. United States, supra; Haffa v. United States,* 516 F.2d 931 (7th Cir.1975).

■ Only one conclusion can be drawn from the evidence at trial: Roth may have relinquished the title of president of Hoffman Can in 1964, but he continued as chairman of the board to run the company and make the major decisions, as testified by Irving L. Holtz, whom Roth appointed as president in 1964. Roth acknowledged that he was aware of Hoffman Can's "deep financial trouble"; that he was active "to some extent" in the company; and that it was he who negotiated with Talcott "up to the end." Holtz, who confined his activities to sales, confirmed that Roth and Morton L. Singer, the company's vice-president and treasurer, handled all financial matters. Singer, a certified public accountant, testified to his familiarity with the requirements for the segregation of employees' withholding amounts as trust funds. There is no question that Roth knew during the second quarter of 1965 that Talcott had restricted its advances to 80% of Hoffman Can's accounts receivable, which permitted payment of employee salaries and wages only on a "net" basis, *i.e.,* without allowance for withholding deductions, so that some portion of the advances could be used for operating expenses to continue production. That Talcott may have wittingly or unwittingly cooperated in such an arrangement did not relieve Roth of his responsibility as a person who "held ultimate authority over the company's financial affairs ...." *Kalb, supra,* at 511.

■ The remaining question for consideration is whether Roth acted "willfully" in acquiescing in the diversion of the moneys which should have been withheld as federal taxes during the second quarter of 1965. The term "willfully" as it applies to Code § 6672 means "a voluntary, conscious and intentional failure to collect, truthfully account for and pay over the taxes withheld from the employees." *Harrington v. United States,* 504 F.2d 1306 (1st Cir.1974); *Monday v. United States, supra; Braden v. United States,* 318 F.Supp. 1189 (S.D.Ohio 1970); *Bloom v. United States,* 272 F.2d 215 (9th Cir.1959). If the responsible person was aware of the fact that the taxes were unpaid and possesses the power to pay them and, possessing the power to pay the taxes, he instead pays other creditors, then he is deemed to have acted willfully. *Kalb v. United States, supra; Harrington v. United States, supra; Newsome v. United States,* 431 F.2d 742 (5th Cir.1970). It is not necessary that bad motives or wicked designs be shown. The willfulness requirement is satisfied with a showing that the responsible person made the conscious and deliberate choice to pay other creditors instead of paying the Government. *Monday v. United States, supra.* Payment of net wages in circumstances where there are no available funds in excess of net wages from which to make withholding is a preference to other creditors constituting a willful failure to collect and pay over under Code § 6672. *Sorenson v. United States,* 521 F.2d 325 (9th Cir.1975).

■ A responsible person, moreover, can still act "willfully" even if he may not have actual knowledge that the specific employment taxes in question have not been paid. The willfulness requirement of § 6672 is also satisfied if the responsible person acts with reckless disregard of a known or obvious risk that trust funds may not be remitted to the Government. *Kalb v. United States, supra; Monday v. United States, supra; Garsky v. United States,* 600 F.2d 86 (7th Cir.1979); *Braden v. United States, supra.*

■ Here, however, the evidence is overwhelming that Roth, who negotiated with Talcott "up to the end," was fully aware that the desperate efforts to save a failing

business made no provision for the collection and segregation of employee payroll and FICA taxes. In acquiescing in such an arrangement during the period in question, the Court finds that Roth acted willfully and in derogation of his responsibility to ensure that the federal taxes in question were collected and timely paid over to the government. In failing to fulfill that obligation, Roth rendered himself liable for the taxes due in the sum of $59,623.05, allowing credit for his partial payment of $100.00.

Accordingly, plaintiff's claim for refund is denied and the Clerk is directed to enter judgment in favor of the United States in the sum of $59,623.05, with interest.

SO ORDERED.