**In the Matter of Allen M. SENALL, Debtor(s).**

**Bankruptcy No. 83–383.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Nov. 19, 1985.

Don M. Stichter, Tampa, Fla., for debtor.

Van O'Neal, Jacksonville, Fla., Robert W. Merkle, Jr., Tampa, Fla., Wm. French Smith, Marika Lancaster, Tax Div., Dept. of Justice, Washington, D.C., for IRS, claimant.

### ORDER OVERRULING DEBTOR'S OBJECTION TO CLAIM OF INTERNAL REVENUE SERVICE

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing with due notice upon the Debtor's Objection to the Claim of the Internal Revenue Service (IRS) filed in the above confirmed Chapter 11 case. The claim, filed in the amount of $275,508.00, is based on unpaid payroll taxes of Becdel Industries, Inc., d/b/a Fashioncraft Furniture (Becdel), and claims a 100% assessment penalty against the Debtor, Allen M. Senall. The IRS seeks to impose a liability on the Debtor for a 100% penalty pursuant to 26 U.S.C. § 6672 for the third and fourth quarters of 1980 and the first three quarters of 1981.

It is the contention of the IRS that Allen M. Senall was a responsible person within § 6672 of the IRS Code of 1954; that he willfully failed to collect, truthfully account

for, and pay payroll taxes for Becdel; and that its claim for a 100% assessment penalty should be approved.

The Debtor contends, first, that he was not a responsible person within the meaning of 26 U.S.C. § 6672 and, second, that even assuming, without admitting, that he was a responsible person, his failure to collect or withhold payroll taxes was not willful as required for the imposition of the 100% assessment under § 6672, citing *United States v. Hill*, 368 F.2d 617 (5th Cir.1966).

The facts germane to the resolution of this matter as developed at the final evidentiary hearing can be summarized as follows:

At the time relevant to the matter under consideration, Becdel was a Florida corporation engaged in furniture manufacturing and maintained its principal place of business including its manufacturing facilities in Largo, Florida. Becdel was experiencing financial difficulties and had filed for relief under Chapter 11 of the Code in August of 1980. On September 23, 1980 Senall purchased 100% of the shares of Becdel and the shares were issued to the Allen M. Senall Irrevocable Living Trust.

In an effort to revitalize the company, the Debtor personally provided in excess of $108,500 operating capital to Becdel during the period from October 16, 1980 through April 3, 1981. In addition, the Debtor wired $22,750 to Becdel on February 20, 1981, to be used for payroll disbursements. From the beginning of March, 1981 through mid-May of 1981, the Debtor personally financed two net payrolls for Becdel, for which he was reimbursed by the corporation within a week. In further efforts to provide operating capital for Becdel, the Debtor successfully negotiated loans from banks and individual investors. He was successful in obtaining $95,000 on March 10, 1981 and two loans in April of 1981—one for $27,000 and one for $75,000.

Although the Debtor was not an officer of the corporation, he was actively involved in the management of Becdel. He hired management personnel, including the indi-vidual who served as president of the corporation until February of 1981, a bookkeeper, a clerk to collect accounts receivable, and a general manager. As noted above, the Debtor also retained the corporation's accounting firm. The Debtor solicited the participation of investors in the corporation and negotiated bank loans, portions of which were used for corporate operating expenses. The Debtor conducted negotiations with at least two major creditors of Becdel. He was a member of the board of directors for the first thirteen weeks of his association with Becdel and was a signatory on two payroll accounts.

The record is clear that in addition to the Debtor's activities in generating revenue for the corporation and hiring its personnel, he directed the overall operation of the company. He determined which expenses were to be paid, controlled the pledging of receivables, and directed the distribution of payments for anything over a few hundred dollars. The Debtor was on the company premises once or twice a week from the beginning of October, 1980 through the end of January, 1981 and less frequently from March, 1981 through May, 1981.

The record discloses that John Mancini, President of Becdel, at the end of 1980 and the beginning of 1981, told the Debtor from the beginning of his involvement that the payroll taxes were not being paid to the Government. Mancini informed the Debtor on a regular basis that there were not enough funds to pay the payroll taxes. The Debtor instructed him just to transfer the net amount of payroll to the payroll account and that he would take care of the payroll taxes later. During the second week of March, 1981, the Debtor negotiated a payment schedule with the Internal Revenue Service to cure the payroll tax delinquencies. Finally, the record discloses that the Debtor was an employee of Becdel and received regular payroll checks from September 26, 1980 through March 6, 1981.

■ Based on the foregoing, this Court is satisfied that the Debtor assumed general control over the corporate business af-

fairs, made decisions concerning the payment of debts and disbursal of funds and, consequently, was a responsible person within the meaning of § 6672. *Hewitt v. United States,* 377 F.2d 921, 924 (5th Cir. 1967); *Cash v. Campbell,* 346 F.2d 670 (5th Cir.1965); *In re Bradford,* 52 A.F.T.R.2d 83–6246 (Bankr.W.D.Va.1983).

■ Since there is no dispute that Becdel, under the Debtor's supervision, failed to collect, account for, and pay over payroll taxes in an amount exceeding $100,000, the only question remaining is whether that failure was willful. *United States v. Pomponio,* 635 F.2d 293 (4th Cir.1980); *Liddon v. United States,* 448 F.2d 509 (5th Cir. 1971), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972).

The record reflects that during the fourth quarter of 1980 and the first quarter of 1981, the Debtor was reimbursed a total of $23,627.43 by Becdel for various expenses incurred on behalf of Becdel. The Debtor was paid a net salary by Becdel from September, 1980 through March, 1981 in an amount in excess of $9,000. From September 9, 1980 through January 26, 1981, $139,052.87 was paid from the corporation's general operating account to suppliers, contractors, and to cover general operating expenses. In January of 1981, $3,000 was paid from the general operating account to an individual investor in the corporation. Through the efforts of the Debtor, Becdel obtained a $95,000 loan in March of 1981 and loans totaling $102,000 in April of 1981. The record reflects only two payments were applied to the federal payroll tax arrearages during that period of time, totaling $14,347.75, in spite of the fact that the arrearages at that time exceeded $68,009.24.

The record is clear that the Debtor directed the distribution of payments from the corporate general account, that he was aware of the substantial payroll tax liability, and that despite his obligation to collect and pay over the payroll taxes, he chose to disburse the company's available funds to himself, to other insiders, and to creditors in general, constituting a willful failure to perform under § 6672. *Howard v. United States,* 711 F.2d 729, 733 (5th Cir.1983); *Mazo v. United States,* 591 F.2d 1151 (5th Cir.1979), cert. denied, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Brown v. United States,* 591 F.2d 1136 (5th Cir.1979). Further, the Debtor personally provided funds for the payment of "net" payrolls and authorized payment of "net" payrolls after he had learned that withholding taxes were unpaid, again, proof of the requisite willfullness. *Mazo v. United States, supra; Emshwiller v. United States,* 565 F.2d 1042, 1045 (8th Cir.1977); *Sorenson v. United States,* 521 F.2d 325 (9th Cir.1975); *Frazier v. United States,* 304 F.2d 528, 530 (5th Cir.1963); *Roth v. United States,* 567 F.Supp. 496, 499 (E.D.N.Y.1983). Based on the foregoing, the IRS is entitled to a 100% assessment in an amount to be determined by later hearing or stipulation of the parties. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Objection to the Claim of the United States of America for federal tax penalties is overruled and the amended claim is allowed in an amount to be determined either by agreement of the parties or by further evidentiary hearing upon proper motion.